02-10-395&396&397-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.  02-10-00395-CV

 

 


 
 
 Eastern Express, LP
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 XTO Energy, Inc.; Permian Land Company, a Division
 of Devonian Enterprises, Inc.;  and Fred W. Jones, Individually and/or d/b/a
 Devonian Enterprises, Inc.
 
 
  
 
 
 APPELLEES
 
 


 

AND

 

NO.  02-10-00396-CV

 

 


 
 
 VICKIE ANNE MAKEHAM; STEVEN D. NGUYEN, AND WIFE, Y.
 MINH NGUYEN; RICK SCIVALLY, AND WIFE, JENETH SCIVALLY; ROMEO SUN; AND
 FLORDELIZA DUE
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 XTO Energy, Inc.; Permian Land Company, a Division
 of Devonian Enterprises, Inc.; and Fred W. Jones, Individually and/or d/b/a
 Devonian Enterprises, Inc.
 
 
  
 
 
 APPELLEES
 
 


AND

 

NO.  02-10-00397-CV

 

 


 
 
 VELMA
 ANN MYLES
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 XTO
 ENERGY, INC.; CHESAPEAKE EXPLORATION COMPANY, LLC; VANTAGE ENERGY, LLC; TITAN
 OPERATING, LLC; QUICKSILVER RESOURCES, INC.; CARRIZO OIL & GAS, INC.;
 TRINITY EAST ENERGY, LLC; PERMIAN LAND COMPANY, A DIVISION OF DEVONIAN
 ENTERPRISES, INC.; FRED W. JONES, INDIVIDUALLY AND/OR D/B/A DEVONIAN
 ENTERPRISES, INC., DALE PROPERTY SERVICES, LLC; THE CAFFEY GROUP, LLC; FOUR
 SEVENS ENERGY CO., LLC; BRYSON KUBA, LP; LLANO OPERATING CORP.; AND CHEAHA
 LAND SERVICES, LLC
 
 
  
 
 
 APPELLEES
 
 
 
 
 
 
 
 
 


 

----------

 

FROM THE 67th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

Appellants,
mineral owners residing in southeast Arlington, Texas, sued Appellees for
breach of contract, promissory estoppel, negligent misrepresentation, fraud,
and violations of the Texas Free Enterprise and Antitrust Act of 1983.  The
trial court dismissed Appellants’ antitrust claims by granting Appellees’ pleas
to the jurisdiction and dismissed Appellants’ remaining claims by granting
Appellees’ motions for traditional and no-evidence summary judgment. 
Appellants contend in eleven issues that the trial court erred by granting the
pleas to the jurisdiction and the motions for summary judgment.  We affirm.

II. 
Background

These
cases, consolidated for purposes of briefing and argument, involve mineral owners
in southeast Arlington.  Southeast Arlington Communities of Texas (SEACTX) is
an unincorporated association comprised of homeowners, homeowners’
associations, and businesses that formed “to negotiate the best possible oil
and gas leases for all participating members.”  SEACTX negotiated with XTO and
other oil and gas companies through the spring of 2008.  Linda Razzano, a SEACTX
negotiator, informed XTO that SEACTX was negotiating on behalf of each of its
members, that each member had the right to lease or not to lease, and that SEACTX
was not attempting to negotiate a “community lease.”

According
to Razzano’s summary judgment affidavit, SEACTX and XTO reached an agreement by
e-mail on April 24, 2008, concerning the form of the proposed lease to be
offered to individual mineral owners, and SEACTX announced the agreement to its
members.  XTO then leased over 1,000 acres (over 4,000 individual tracts) from
individual mineral owners residing within SEACTX.  But gas prices dropped
significantly in October 2008, and XTO was no longer willing to acquire
additional leases on the terms discussed with SEACTX in April 2008.

Appellants,
mineral owners who did not lease with XTO in 2008, subsequently filed suit
against Appellees alleging breach of contract, promissory estoppel, negligent
misrepresentation, antitrust violations, and other causes of action.  Among
other relief, Appellants prayed that XTO “be ordered to specifically perform in
accordance with the contract terms and issue a check to [Appellants] in the
full amount owed for the bonus payment” agreed to with SEACTX in April 2008. 
Appellants’ claims were dismissed following the trial court’s orders on
Appellees’ pleas to the jurisdiction and motions for traditional and
no-evidence summary judgment.  This appeal followed.

III. 
Breach of Contract and Promissory Estoppel

Appellants
argue in their second issue that there are genuine issues of material fact
concerning their status as third-party beneficiaries of the alleged contract
between XTO and SEACTX, and they assert in their eighth issue that genuine
issues of material fact remain on each element of their promissory estoppel
claim.

A.  Summary
Judgment Standards of Review

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.  Frost Nat’l Bank v. Fernandez,
315 S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).

After
an adequate time for discovery, the party without the burden of proof may,
without presenting evidence, move for summary judgment on the ground that there
is no evidence to support an essential element of the nonmovant’s claim or
defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence.  Id.; Timpte Indus., Inc. v.
Gish, 286 S.W.3d 306, 310 (Tex. 2009).  The trial court must grant the
motion unless the nonmovant produces summary judgment evidence that raises a
genuine issue of material fact.  See Tex. R. Civ. P. 166a(i) & cmt.;
Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006).  We review a no-evidence summary judgment for evidence
that would enable reasonable and fair-minded jurors to differ in their
conclusions.  Hamilton, 249 S.W.3d at 426 (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to
the nonmovant if reasonable jurors could, and we disregard evidence contrary to
the nonmovant unless reasonable jurors could not.  Timpte Indus., 286
S.W.3d at 310 (quoting Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006)).  If the nonmovant brings forward more than a scintilla of
probative evidence that raises a genuine issue of material fact, then a
no-evidence summary judgment is not proper.  Smith v. O’Donnell, 288
S.W.3d 417, 424 (Tex. 2009); King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004).

B.  Third-Party
Beneficiary

This
court recently addressed identical arguments in a substantially similar
appeal.  In that case, an unincorporated, nonprofit association called
Southwest Fort Worth Alliance (SFWA) negotiated with Vantage Energy, LLC on
behalf of mineral interest owners within SFWA.  Maddox v. Vantage Energy,
LLC, No. 02-11-00210-CV, 2012 WL 407269, at *1 (Tex. App.—Fort Worth Feb.
9, 2012, no pet. h.).  In the opinion, we described the relevant facts as
follows:

Appellants assert
that a written contract exists between Vantage and SFWA; Appellants claim the
contract consists of a series of approximately eleven emails—and the
attachments to those emails, including the uniform oil and gas lease form—that
were exchanged between Vantage and an individual acting for SFWA.  Based on the
emails and the uniform oil and gas lease form, SFWA publicized that Vantage had
“won the bid for endorsement” of SFWA and was SFWA’s “preferred and endorsed
Natural Gas Developer.”  Appellants concede in their brief that SFWA did not
possess authority to, and did not, negotiate individual leases for Appellants
or for anyone; instead, Appellants claim that the contract between Vantage and
SFWA was “a contract for an endorsement of Vantage and its offer.”

 

The uniform oil and
gas lease form is a template; it provides blanks for the date of execution of
the lease, the name of the lessor, and for the legal description and address of
the property covered by the lease.  The uniform oil and gas lease form also
states that each individual lessor is not obligated to sign the form lease but
instead has the right to negotiate his or her own terms with any oil and gas
company and individually bears the responsibility of investigating the lease
and its terms.

 

Vantage
began obtaining leases from mineral owners in the SFWA neighborhoods.  Between
4,000 and 7,500 leases were obtained; the record does not reflect if these
lessors negotiated to modify the uniform oil and gas lease terms or not.  Approximately
one month later, however, as the price of natural gas fell, Vantage suspended
its urban leasing activities.  Appellants filed the instant suit, seeking to compel
Vantage to offer them an oil and gas lease in accordance with the terms set
forth in the uniform oil and gas lease form. Appellants’ petition prayed that
the court “award Plaintiffs specific performance and give Plaintiffs the
opportunity to accept or reject the negotiated lease, as described herein. . . .”

Id.
(footnotes omitted).  Addressing the third-party beneficiary contention in that
case, we held that the appellants lacked standing to sue for breach of contract
because the purported contract between Vantage and SFWA did not identify the
appellants in the purported contract documents in a manner sufficient to
overcome the presumption against third-party beneficiary agreements.  Id.
at *3–5.

There
are no substantive differences between Appellants and the plaintiffs in our Maddox
case.  Appellants are not named in the documents that they claim constitute the
contract with XTO, there is no list of the individual members of SEACTX, and
the map included within the documents was—by Appellants’ own admission—not
accurate at the time XTO and SEACTX allegedly entered into the contract on
April 24, 2008.[2]  There is also summary
judgment evidence that parts of SEACTX had been “heavily leased” by XTO’s
competitors.  Thus, just as we held in Maddox, even assuming there was a
contract between SEACTX and XTO, there is no intent to directly benefit
Appellants as third-party beneficiaries clearly written into or evidenced by
the alleged contract documents because Appellants are not sufficiently
identified by the alleged contract documents.  See id. at *4.  In
addition, Appellants are neither donee beneficiaries nor creditor
beneficiaries.  As we explained in Maddox,

[T]o date, the law
recognizes only two types of third-party beneficiaries:  donee beneficiaries
and creditor beneficiaries. . . . Appellants are not donee beneficiaries
because the performance allegedly promised by Vantage that Appellants seek
specific performance of—the offer and execution of a lease in accordance with
the terms of the uniform oil and gas lease form—will, when rendered, not come
as a pure donation but will be made in exchange for the lease of Appellants’
mineral rights.  Likewise, Appellants are not creditor beneficiaries because
Vantage owed Appellants no legal duty, indebtedness, or contractual obligation.
 The alleged contract between Vantage and SFWA did not express an intent to
confer a benefit on Appellants or an intent that Appellants possess the right
to enforce the alleged contract between Vantage and SFWA.

Id. at
*5 (citations omitted).  We therefore hold that Appellants are not third-party
beneficiaries to the contract, if any, between SEACTX and XTO and that they
thus lack standing to sue to enforce any such contract.  See id.  We
overrule Appellants’ second issue.[3]

C. 
Promissory Estoppel

Appellants
also lack standing to assert a promissory estoppel claim as an independent
cause of action.  For the reasons explained in our Maddox opinion,
Appellants are not promisees who can assert promissory estoppel against
Appellees because the alleged promise was made only to SEACTX.  See id.
at *7.  Because Appellants do not qualify as third-party beneficiaries of the alleged
contract with XTO and do not qualify as promisees to whom XTO made any promise,
they cannot create liability for XTO or create some promise between themselves
and XTO where none exists as a matter of law.  See id.  We thus hold
that Appellants lack standing to assert a promissory estoppel cause of action
against XTO, and we overrule Appellants’ eighth issue.

IV. 
Negligent Misrepresentation

In
their ninth issue, Appellants contend that there are genuine issues of material
fact as to each element of their negligent misrepresentation claims.

Appellants
moved for no-evidence summary judgment on Appellants’ negligent misrepresentation
claims on the ground, among others, that Appellants had no evidence that they
“suffered compensable non-benefit-of-the-bargain damages.”  In their summary
judgment responses, Appellants argued that they were entitled to the difference
between the value of the leases (including signing bonuses, royalty payments,
and lease language) offered by XTO before the offers were withdrawn and the
value of the subsequent, inferior lease offers.  Appellants did not argue that
they expended any money in alleged reliance on XTO’s representations.

Relying
on a 1981 Texas Supreme Court opinion, Appellants argue that their damages are
reliance damages, not benefit-of-the-bargain damages.  See Fretz Constr. Co.
v. S. Nat’l Bank of Houston, 626 S.W.2d 478, 483 (Tex. 1981).  The Fretz
case is inapplicable, however, because it involved only a claim for promissory
estoppel, not negligent misrepresentation.  See id. at 479, 483. 
Moreover, reliance damages are the out-of-pocket expenditures made in reliance
on actions by another party.  Sterling Chem., Inc. v. Texaco, Inc., 259
S.W.3d 793, 798 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  Appellants
have not identified any expenses they incurred in alleged reliance on XTO’s
representations.  Instead, they rely solely on a damage theory that would award
them the amounts of money they would have received had they signed mineral
lease agreements with XTO.  But this is a benefit-of-the-bargain theory, not a
reliance theory, and the Texas Supreme Court has unequivocally held that “the
benefit of the bargain measure of damages is not available for a claim of
negligent misrepresentation.”  D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,
973 S.W.2d 662, 663 (Tex. 1998); see also Esty v. Beal Bank S.S.B., 298
S.W.3d 280, 302 (Tex. App.—Dallas 2009, no pet.) (“A plaintiff cannot recover
benefit-of-the bargain damages for negligent misrepresentation; a plaintiff can
only recover for out-of-pocket loss.”).

Because
the damages Appellants seek are not recoverable for a negligent misrepresentation
claim, the trial court did not err by granting summary judgment on Appellants’
negligent misrepresentation claim.  We therefore overrule Appellants’ ninth
issue.

V. 
Antitrust Claims

Appellants
contend in their eleventh issue that they have standing to sue for violations
of the Texas Free Enterprise and Antitrust Act and that the trial court
therefore erred by granting Appellees’ pleas to the jurisdiction on that basis.

A. 
Standard of Review

A
plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat
a cause of action without regard to whether the claims asserted have merit. Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  Whether the
trial court has subject matter jurisdiction is a question of law that we review
de novo.  Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217,
226 (Tex. 2004); Tex. Natural Res. Conservation Comm’n v. IT–Davy, 74
S.W.3d 849, 855 (Tex. 2002).  The determination of whether a trial court has
subject matter jurisdiction begins with the pleadings.  Miranda, 133
S.W.3d at 226.  The plaintiff has the burden to plead facts affirmatively
showing that the trial court has jurisdiction.  Tex. Ass’n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  We construe the pleadings
liberally in favor of the pleader, look to the pleader’s intent, and accept as
true the factual allegations in the pleadings.  See Miranda, 133 S.W.3d
at 226, 228; City of Fort Worth v. Crockett, 142 S.W.3d 550, 552 (Tex. App.—Fort
Worth 2004, pet. denied) (op. on reh’g).

B. 
Discussion

Appellants
alleged in their pleadings that they are real property owners in Tarrant
County, that their property lies within the boundaries of SEACTX, and that they
agreed that SEACTX would negotiate with various oil and gas entities on their
behalf for the lease of their property “on the most economically favorable
terms that SEACTX could negotiate.”  Appellants further alleged that they are
“persons” as defined by the Texas Free Enterprise and Antitrust Act of 1983 and
that “the agreement(s) between [Appellees] constitutes an agreement with the
intended purpose and effect of lessening competition in the market to lease
lands within the geographic boundaries of the Barnett Shale . . . by keeping
prices for bonus payments and royalty payments at an artificially low level.”

In Maranatha
Temple, Inc. v. Enterprise Products Co., 893 S.W.2d 92, 105 (Tex.
App.—Houston [1st Dist.] 1994, writ denied), our sister court affirmed summary
judgment on the ground that Maranatha lacked standing to sue for alleged
antitrust violations.  Maranatha operated a church in Mont Belvieu, Texas.  Id.
at 95.  Due to industrial accidents at their hydrocarbon facilities, the defendants
decided to purchase residential and church properties adjacent to their
hydrocarbon facilities and announced their intention in a press release.  Id. 
According to the press release, no home would be within 800 feet of a storage
well if all properties within the designated area were purchased.  Id. 
Maranatha contended that it should have but did not receive an offer to
purchase its property, and it sued the defendants for antitrust violations and
several other causes of action.  Id. at 95–96.  Affirming summary
judgment for the defendants, the court wrote as follows:

Whether a plaintiff
has standing to bring an antitrust claim is the initial inquiry in antitrust
cases.  See Jayco Sys., Inc. v. Savin Business Machs. Corp., 777 F.2d
306, 313 (5th Cir. 1985).  The issue of standing to bring an antitrust claim is
a question of law.  Eagle v. Star–Kist Foods, Inc., 812 F.2d 538, 539
(9th Cir. 1987).

 

The party bringing an
antitrust claim “must be either a consumer of the alleged violator’s goods or
services or a competitor of the alleged violator” in the market.  [Id.]
at 540; accord Bell v. Dow Chem. Co., 847 F.2d 1179, 1183 (5th Cir. 1988)
(holding that “consumers and competitors . . . are the parties that have
standing to sue”); see Associated Gen. Contractors v. California State
Council of Carpenters, 459 U.S. 519, 539, 103 S. Ct. 897, 909 (1983)
(holding that plaintiff had no antitrust cause of action where it “was neither
a consumer nor a competitor” in the market).  . . .  Maranatha asserts that it
was a potential seller of real estate (its own property) in the market; that it
“showed an intention to enter the business of selling real estate . . .”

 

Maranatha’s status as
a potential seller of real estate does not make it a competitor of the
appellees.  The appellees were not sellers of real estate.  On the contrary,
they were buying real estate; hence, Maranatha’s complaint that they did
not buy Maranatha’s property.  The appellees were not in the business of
selling property.

 

Because
Maranatha was neither a consumer of the appellees nor their competitor,
Maranatha lacks standing to bring an antitrust claim.

Id. at
105.  The facts as alleged in Appellants’ pleadings in this case are very
similar to those involved in Maranatha.  Appellants are potential
lessors or “sellers” of their mineral rights, but they are not Appellees’
consumers or competitors.

          Rather
than attempting to distinguish Maranatha, Appellants argue that Maranatha
does not accurately reflect the law because it allegedly conflicts with federal
cases interpreting federal antitrust statutes.  But Maranatha’s requirement
that an antitrust plaintiff be a consumer or competitor is consistent with
numerous federal court decisions.  See, e.g., Associated Gen.
Contractors, 459 U.S. at 539–40, 103 S. Ct. at 909 (holding union did not
have standing because it was, in that case, “neither a consumer nor a
competitor in the market in which trade was restrained”); Norris v. Hearst
Trust, 500 F.3d 454, 466 (5th Cir. 2007) (holding plaintiffs had not
suffered an antitrust injury and therefore lacked standing because they were “neither
consumers (buyers of advertising, or users of advertising such as subscribers)
nor competitors (sellers of advertising) in the relevant market”); Bell,
847 F.2d at 1183 (stating that Supreme Court had “articulated the high standing
threshold that plaintiffs must cross in the antitrust setting” and that
“[r]estraint in the market affects consumers and competitors in the market; as
such, they are the parties that have standing to sue”); In re Beef Indus.
Antitrust Litig., 600 F.2d 1148, 1168 (5th Cir. 1979) (holding claimants
who alleged they made retail purchases of beef as consumers had standing
to assert antitrust claims).  Maranatha has also been cited by two other
Texas appellate courts.  See Roberts v. Whitfill, 191 S.W.3d 348, 354–55
(Tex. App.—Waco 2006, no pet.); Sw. Bell Tel. Co. v. Superior Payphones,
Ltd., No. 13-05-00661-CV, 2006 WL 417423, at *7 n.4 (Tex. App.—Corpus
Christi Feb. 23, 2006, pet. dism’d) (mem. op.).  Thus, we hold that the trial
court did not err by granting Appellees’ pleas to the jurisdiction, and we overrule
Appellants’ eleventh issue.[4]

VI. 
Conclusion

Having
overruled Appellants’ dispositive issues, we render judgment dismissing
Appellants’ breach of contract and promissory estoppel claims in each case for
lack of standing, and we affirm the remainder of the trial court’s judgments.

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and GABRIEL, JJ.

 

DELIVERED:  March 29, 2012









[1]See Tex. R. App. P. 47.4.





[2]In her summary judgment
affidavit, Razzano described the map as the “general area” of SEACTX.  She also
stated that SEACTX grew after the initial contact with XTO and that it was
still growing, even in April 2008 when SEACTX and XTO allegedly entered into a
contract.  Also, on April 14, 2008, Razzano sent XTO a list of more than forty
subdivisions and homeowners’ associations that were part of SEACTX, but her
e-mail stated that she believed this was “almost all of the subdivisions
currently under our group,” that “[t]here may be more,” and that “[w]e also
have businesses and a number of churches as well.”  Razzano’s affidavit also
states that she told XTO even after April 24 that SEACTX “still had groups that
were interested in joining.”





[3]Because we have assumed
for purposes of this opinion that a valid, written contract existed between XTO
and SEACTX, we need not address Appellants’ first, third, fourth, fifth, sixth,
or seventh issues in which they contend that there are genuine issues of
material fact as to whether there was an enforceable agreement between XTO and
SEACTX, that the statute of frauds does not apply to the alleged contract
between XTO and SEACTX, and that there are applicable exceptions to the statute
of frauds if the doctrine does apply.  See Tex. R. App. P. 47.1, 47.4.





[4]Given our disposition of
Appellants’ second, eighth, ninth, and eleventh issues, we need not decide
Appellants’ tenth issue.  See Tex. R. App. P. 47.1.