

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-102-CV

MELISSA KOHOUT                                                      APPELLANT

V.

CITY OF FORT WORTH, TEXAS,                                          APPELLEES
DAVID LUNSFORD AND TOM
EDWARDS

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Melissa Kohout appeals from the trial court's grant of the plea to the jurisdiction filed by the City of Fort Worth, Texas ("the City"), David Lunsford (the City's gas well inspector), and Tom Edwards (the City's senior gas drilling inspector) on her claims that she was denied due process, equal protection, and the right to petition her government. In one issue, Kohout argues that she has standing to assert that the City's actions violated her constitutional rights to

petition her government, to due process, and to equal protection. Because we hold that Kohout does not have standing to assert her claims, we affirm.

## THE ORDINANCE

In 2006, the City adopted Ordinance Number 16986-06-2006 ("the Ordinance"), amending the chapter of the City's Code of Ordinances regulating gas well drilling and production within the City.[1] The Ordinance provides that any person wishing to engage in gas production activities within the City must apply for and obtain a gas well permit.[2] Gas wells are characterized as rural, urban, or high-impact.[3] A "high impact permit," also referred to as a "high impact gas well permit," is required for any gas well located within 600 feet of a protected use.[4] A "protected use" is a residence, religious institution, public building, hospital building, school, or public park.[5] The Ordinance defines the term "public park" as "any land area dedicated to and/or maintained by the City for traditional park-like recreational purposes, but shall not include privately-

---

[1] Fort Worth, Tex., Ordinance 16986-06-2006 (June 13, 2006), *amended by* Fort Worth, Tex., Ordinance 18449-02-2009 (Feb. 3, 2009).

[2] *Id.* § 15-34(A).

[3] *Id.* § 15-36.

[4] *Id.* §§ 15-31(BB), 15-36(I).

[5] *Id.* § 15-31(FF).

owned amusement parks or privately-owned or privately-managed golf courses."[6]

A "rural gas permit" is required if the proposed well will be located on an open space of at least twenty-five acres and if no operations will be conducted within 1,000 feet of a protected use.[7] For any other well, an "urban gas well permit" is required.[8]

The Ordinance provides for two methods of obtaining a high impact permit: by permission of the City Council or by waiver of protected uses.[9] To obtain a high impact permit by waiver, a permit applicant must obtain notarized waivers from all protected use property owners within 600 feet of the proposed site.[10] The applicant must file these waivers in the county property records and must attach copies of them to the permit application.[11]

---

[6] *Id.* § 15-31(HH).

[7] *Id.* § 15-31(NN).

[8] *Id.* § 15-31(SS).

[9] *Id.* § 15-36(I)(A).

[10] *Id.* § 15-36(I)(D).

[11] *Id.*

3

At least ten days prior to filing the application, the applicant must publish a notice in a newspaper of general circulation.[12] The notice must include a statement that written waivers from all protected use property owners within 600 feet of the proposed well site were filed in the county records.[13] Also at least ten days prior to filing the application, the applicant must post a sign at the premises for which the permit has been requested.[14] The sign must "substantially indicate" that a high impact permit has been applied for.[15] An applicant for an urban gas well permit must also, at least ten days before filing an application, post a notice on the proposed well site and insert a notice in a newspaper of general circulation that an urban gas well permit has been requested.[16]

## THE DISPUTE

On August 30, 2007, Chesapeake Operating, Inc. ("Chesapeake") applied for an urban gas well permit. The City did not issue an approval or denial of the permit within thirty days of the application. Kohout asserts in her brief that the

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* § 15-36(II)(B).

4

application lapsed because the City did not act on it. The Ordinance requires the gas inspector to review and approve or disapprove all permit applications within thirty days of their filing.[17] The Ordinance does not provide that the failure of the inspector to timely approve or disapprove an application will cause an application to lapse.[18] It does, however, provide that the failure of the gas inspector to review and issue a permit within the thirty days will not cause the application to be deemed approved.[19]

The proposed well site was located on property owned by Chesapeake Energy. This property was within 600 feet of the Trinity Trails, a hike-and-bike path along the Trinity River. Lunsford notified the city council member in whose district the site was located that an application had been submitted and was "for an Urban Class permit that will not require Council action." As required by the Ordinance, Chesapeake posted a sign at the site and published a notice in the local newspaper that an urban gas well permit had been applied for.

A group of concerned citizens took various steps to protest the permit application, including holding a picnic by the proposed drilling site, objecting at

---

[17] *Id.* § 15-37(A).

[18] *Id.*

[19] *Id.* § 15-37(B).

a public forum, and voicing their concerns at a City Council meeting. On September 26, 2007, Kohout, through her attorney, sent a letter to Lunsford objecting to the permit application. She based her objection on the proposed well site's proximity to the Trinity Trails, which she contended is a public park. An employee in the City's legal department responded by stating that the Trinity Trails is not a public park. The employee informed Kohout's attorney that the Trinity Trails are owned and maintained by the Tarrant Regional Water District ("the Water Board") and asserted that, accordingly, the proximity of the proposed well site to the Trails would not constitute a basis for denying the permit.

On October 2, 2007, Lunsford sent an e-mail to a number of city employees, including Edwards, stating that with respect to Chesapeake's permit application, "[t]he rule is 'No Comment' to anyone about the well . . . and accept no paper work (like a petition) from anyone." On October 5, 2007, the Water Board executed a waiver to Chesapeake. On October 8, 2007, the City issued a high impact permit to Chesapeake. When asked about the permit after its issuance, a member of the City's legal department stated that Chesapeake originally had applied for an urban gas well permit "but met all the technical requirements for a high impact well permit." She went on to say that "[t]he

6

sign posted on the property referenced an urban gas well permit, but Chesapeake met the more restrictive permit requirements."

On October 16, 2007, Kohout's attorney sent a letter to the City asking it to withdraw the permit. He asserted that the permit was not granted in accordance with the Ordinance because Chesapeake did not provide notice that a high impact permit had been applied for. He further asserted that the issuance of the permit violated Kohout's First Amendment rights to express her opinion and to petition her government that high impact drilling threatens the safety of people like her who use the Trinity Trails. He also contended that the City's issuance of the permit without requiring Chesapeake to follow the Ordinance gave Chesapeake special treatment. The City responded with a letter stating that the purpose of the Ordinance's notice provisions is to provide the public with notice of a pending application and that Kohout had demonstrated that she had notice of Chesapeake's application to drill on the site. The City further stated that rather than showing favoritism, the issuance of a high impact permit rather than an urban gas well permit meant that Chesapeake would have to follow more restrictive procedures in drilling on the site.

**PROCEDURAL HISTORY**

Kohout then filed suit against the City, Lunsford, and Edwards. She sought a writ of mandamus ordering the City to withdraw Chesapeake's permit. She further sought a declaration that the City's Ordinance prohibits drilling at the site; the Trinity Trails is a "public park"; the City improperly issued a drilling permit too close to the Trinity Trials in violation of the Ordinance; and the City violated her right to petition the government, her right to free speech, and her right to equal protection. The City, Lunsford, and Edwards answered and filed a plea to the jurisdiction challenging Kohout's standing to assert her claims, contending that she had not suffered any particularized injury. The trial court granted the City's plea. Kohout now appeals.

**ANALYSIS**

In her only issue, Kohout argues that she has standing to assert that the City's actions violated her constitutional rights to petition her government, to due process, and to equal protection. We review de novo a trial court's determination on the question of standing.[20] In our review, we construe the pleadings liberally in the plaintiff's favor.[21] We may consider evidence

---

[20] *Antonov v. Walters*, 168 S.W.3d 901, 904 (Tex. App.—Fort Worth 2005, pet. denied).

[21] *City of Argyle v. Pierce*, 258 S.W.3d 674, 680 (Tex. App.—Fort Worth 2008, pet. dism'd).

presented to the trial court when necessary to resolve the jurisdictional issues raised.[22]

Standing is a component of subject-matter jurisdiction.[23] For a plaintiff to have standing, there must be a real controversy between the parties that will actually be determined by the judicial declaration sought.[24] Only a litigant who has suffered an injury has standing.[25] The alleged injury must be particular to the plaintiff and distinct from that suffered by the general public.[26] Thus, if

---

[22] *Id.*; *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

[23] *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008); *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001).

[24] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

[25] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (stating that to have standing, a plaintiff must have suffered an injury that is concrete and particularized); *Tex. Air Control Bd.*, 852 S.W.2d at 444.

[26] *Lujan*, 504 U.S. at 560; *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) ("A plaintiff has standing when it is personally aggrieved"); *Persons v. City of Fort Worth*, 790 S.W.2d 865, 872 (Tex. App.—Fort Worth 1990, no writ) (holding that appellant was without standing to challenge city's alleged violation of zoning ordinances because he had not pled and proved that he suffered damages or injury other than as a member of the general public); *City of Fort Worth v. Groves*, 746 S.W.2d 907, 912, 917 (Tex. App.—Fort Worth 1988, no writ) (holding that resident of a county had standing to challenge a lease entered into by the county under open meetings act provision and as a taxpayer but that he did not have standing to contest the lease with respect to special revenue bonds because he had not

Kohout has not suffered a particularized injury, she has no standing, and the trial court did not have jurisdiction over her claims.[27]

Kohout first argues that she was denied her right under the federal and state constitutions to petition the government.[28] With respect to this claim, the City argued in its plea to the jurisdiction and argues on appeal that Kohout could not show a particularized injury because she knew that the well would be drilled within 600 feet of the Trinity Trails. Thus, she was not injured by not knowing what designation the well would be given because she could have and did petition the City to not allow drilling at the site.

But this argument does not address Kohout's point. Kohout's asserted particularized injury was the denial of her right to petition the Water Board, not the City. She argues that because the City told her that no high impact gas well permit would be required, she did not know that Chesapeake would be required to obtain either a waiver of the requirement by the City Council after a hearing or a waiver from the Water Board. Consequently, she did not have the opportunity to petition the Water Board and ask it to not give a waiver.

---

shown damages to himself or any damages at all).

[27] *See Lujan*, 504 U.S. at 560; *Groves*, 746 S.W.2d at 917.

[28] *See* U.S. Const. amend. I; Tex. Const. art. I, § 27.

10

As Kohout points out, under the City's argument, even though the City informed her that Chesapeake would not need the Water Board's consent to a waiver, she nevertheless should have petitioned the Water Board to deny its consent. If Kohout had known that Chesapeake would be seeking a waiver from the Water Board, she argues, she could have petitioned the Water Board to deny the waiver, and by the City affirmatively representing to her that no high impact permit would be required (and thus no consent by the Water Board would be required), the City denied her her constitutional right to petition the Water Board. We therefore reject the City's argument that Kohout's knowledge that a gas well would be drilled on the site satisfied her right to petition the Water Board.

Nevertheless, we conclude Kohout was not injured because the Ordinance upon which she relies never requires notice that waivers will be sought; it only requires notice that waivers have already been obtained and that an applicant is seeking a high impact permit based on those waivers.[29] Kohout argues that the City violated her right to petition the Water Board because it did not provide notice that the proposed well would be a high impact well requiring a waiver by the Water Board. Had Chesapeake originally sought a high impact permit by

_____

[29] Fort Worth, Tex., Ordinance 16986-06-2006 § 15-36(I)(D) (amended 2009).

11

waiver—and accordingly triggered the requirement that a notice of the application be posted at the well site and in the newspaper—it would have had to file the Water Board's waiver with its application.[30] Furthermore, the notice placed in the newspaper would have stated that the waivers from the relevant property owners had already been obtained and filed in the real property records.[31] Thus, if the City had required proper notice that Chesapeake's application was for a high impact permit, then when Chesapeake placed the notice in the newspaper and at the well site, giving Kohout the notice she says she was denied, at that time the Water Board would have already executed a waiver. Kohout would have been in the same position she is in today with respect to petitioning the Water Board to refuse to grant a waiver—asking the Water Board to not do something it had already done. Thus, Kohout suffered no injury to her right to petition the Water Board by the City's failure to post a notice or to require Chesapeake to post a notice at the well site that a high impact permit by waiver had been applied for.

Kohout also complains that the City misrepresented to her that a high impact permit would not be required but then told Chesapeake that it would

---

[30] *See id.*

[31] *See id.*

12

have to obtain a waiver from the Water Board.  But the record reveals no injury to Kohout.

The City never specifically told Kohout that no high impact permit would be required.  The City informed Kohout that the Water Board rather than the City owned and maintained the Trinity Trails, that the property therefore did not constitute a "public park" as defined in the Ordinance, and that accordingly it could not use the proposed well site's proximity to a public park as the basis for denying the permit.  And without violating the Ordinance, the City could have subsequently changed its mind and decided that the Trinity Trails was a public park despite the fact that the City did not own or maintain the property, denied Chesapeake's permit application, and informed Chesapeake that it would need to reapply for a different permit.  Or the City could have declined to respond at all to Kohout's inquiry and told Cheseapeake to reapply for a high impact permit.  Chesapeake, then, would have needed to resubmit the same application, this time with the Water Board's waiver attached.  It would also have to give notice to the public that a high impact permit had been applied for and that it had already obtained waivers from protected use property owners.  At no time before waivers are obtained does an applicant have any obligation

13

to notify the general public that a high impact permit is being sought.[32] Under these scenarios, once again, Kohout would have received no notice prior to the Water Board's execution of a waiver.

Kohout implies an obligation on the part of the City to inform her that it had decided that Chesapeake would need a high impact permit, but no such obligation exists before waivers are obtained.[33] It is the applicant, not the City, that must provide notice to the general public, and at no point before waivers are obtained from property owners does an applicant have an obligation under the Ordinance to inform Kohout or any other member of the general public that it will be seeking a waiver from property owners.[34] Thus, the City had no obligation to give Kohout any information on the subject, and even if it had misled her about its intentions regarding the permit, it did not injure her because it did not deprive her of information she was entitled to have.

Kohout argues that the City is judicially estopped from denying its ownership of the Trinity Trails because of a position it took in *Schleuter v. City of Fort Worth*.[35] Judicial estoppel "'precludes a party from adopting a position

---

[32] *See id.*

[33] *See id.*

[34] *Id.*

[35] 947 S.W.2d 920 (Tex. App.—Fort Worth 1997, pet. denied).

14

inconsistent with one that it maintained successfully in an earlier proceeding.'"[36]   In *Schleuter*, the City sought an injunction prohibiting the operation of a business it claimed was a sexually oriented business on the ground that it was in violation of an ordinance requiring such businesses to be more than 1,000 feet from a park or residential neighborhood.[37]   The City took the position that Forest Park is a park and submitted the affidavit of Richard Zavala, Jr., Director of the City's parks and community services department, stating that the City "owns and/or maintains approximately 15.5 miles of hard surface paths along the Trinity River."[38]   The trial court granted the injunction on the ground that the business violated the ordinance because it was within 1,000 feet of a residential neighborhood.[39]

Even assuming that these 15.5 miles are a part of the Trinity Trails and that the City still owns them, the affidavit is not clear that the portion of the Trinity Trails owned by the City is the same part of the Trinity Trails that falls within 600 feet of the drill site.   Further, because in *Schleuter* it was

---

[36] *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (quoting 2 Roy W. McDonald & Elaine G. Carlson, Texas Civil Practice § 9.51 at 576 (2d ed. 2003)), *cert. denied*, 129 S. Ct. 1003 (2009).

[37] *Schleuter*, 947 S.W.2d at 923–24.

[38] *Id.* at 930.

[39] *Id.* at 923.

15

undisputed that the business was within 1,000 feet of a residential neighborhood, this Court did not make any determination about whether the City owned or maintained the property and expressly declined to address the issue of what constituted a "park" under the Ordinance.[40] Thus, the doctrine of judicial estoppel does not apply to estop the City from asserting that it does not own the property at issue in this case.[41]

The City has never wavered in its assertion that it did not own or maintain the part of the Trinity Trails in dispute. It has only suggested through comments of the City's attorney that after receiving Kohout's letters, the City gave some consideration to whether the property might constitute a public park after all and that it decided to require a waiver from the Water Board as a precaution. As we have stated, this decision did not trigger any obligation on the City's part to inform Kohout that it had changed its mind about the permit. Thus, Kohout has suffered no particularized injury with respect to her right to petition the government, and she has no standing to assert the claim.[42]

---

[40] *Schleuter*, 947 S.W.2d at 924.

[41] *See Pleasant Glade Assembly of God*, 264 S.W.3d at 6.

[42] *See Lujan*, 504 U.S. at 560; *Nootsie, Ltd.*, 925 S.W.2d at 661; *Groves*, 746 S.W.2d at 917.

Kohout also argues that she has standing to assert an equal protection claim under article I, section three of the Texas Constitution.[43] She asserts that the City treated her differently than Chesapeake because the City represented to her that the well was not a high impact well, which led her to believe that no waiver from the Water Board would be required, but at the same time the City told Chesapeake that it needed such a waiver. Kohout also argues that the City owns property within 600 feet of the drill site, yet granted the permit without requiring a waiver from the City, and thus it gave Chesapeake special preferential treatment.

The equal protection clause of the Texas Constitution requires that "all persons similarly situated should be treated alike."[44] The Texas Constitution does not require that all classes of persons be treated the same.[45] Rather, it requires that the law "operate equally and uniformly upon all persons in *similar*

---

[43] *See* Tex. Const. art I, § 3 ("All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.").

[44] *Sanders v. Palunsky*, 36 S.W.3d 222, 224–25 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

[45] *Beaumont Traction Co. v. State*, 57 Tex. Civ. App. 605, 122 S.W. 615, 617 (Galveston 1909, no writ).

*circumstances*."[46] A plaintiff asserting an equal protection claim must establish that she "was treated differently than other *similarly-situated* parties."[47]

Here, Kohout's pleadings and the evidence considered by the trial court show that, at most, she was treated differently than a permit applicant. She has not shown that she was similarly situated to Chesapeake. Nor has she shown that by the City failing to give her notice of Chesapeake's intent to obtain a waiver from the Water Board, the City treated her differently from parties similarly situated to her. Thus, she has failed to show any injury to her rights under the equal protection clause. Accordingly, she has no standing to assert such a claim.[48]

Kohout further argues that she has standing to assert a due process claim under the Texas Constitution because the City failed to give her notice that a high impact permit was being applied for, thus depriving her of her right to

---

[▲]

[46]*Id.* (emphasis added); *see also Sanders*, 36 S.W.3d at 224–25 ("The principle of equal protection guarantees that 'all persons similarly situated should be treated alike.'").

[47][▲] *Sanders*, 36 S.W.3d at 225 (emphasis added).

[48][▲] *See Nootsie, Ltd.*, 925 S.W.2d at 661; *City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 244 (Tex. App.—Fort Worth 2007, pet. denied).

petition the Water Board.[49]  Under the Ordinance, the City is not required to give notice to anyone that a high impact permit is being applied for.[50]  Rather, the applicant must give such notice.[51]  And since any required waivers have already been obtained by the permit applicant at the time the applicant gives that notice, the City never gives anyone, including Kohout, notice before waivers are obtained that a permit applicant will be seeking them.  Kohout has not demonstrated any particularized injury, or any injury at all, as to her due process claim.  Accordingly, she does not have standing to assert this claim.[52]  We overrule Kohout's issue.

**CONCLUSION**

Having overruled Kohout's issue, we affirm the judgment of the trial court dismissing her claims for lack of subject-matter jurisdiction.[53]

---

[49] *See* Tex. Const. art I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.").

[50] Fort Worth, Tex., Ordinance 16986-06-2006 § 15-36(I)(D) (amended 2009).

[51] *Id.*

[52] *See Nootsie, Ltd.*, 925 S.W.2d at 661; *Groves*, 746 S.W.2d at 917.

[53] *See Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 849 (Tex. App.—Fort Worth 2005, no pet.) (affirming trial court's judgment dismissing plaintiffs' claims for lack of standing).

                                        LEE ANN DAUPHINOT
                                        JUSTICE

PANEL:  LIVINGSTON and DAUPHINOT, JJ.

DELIVERED:  June 11, 2009