02-11-439-CV












 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.
02-11-00439-CV

 

 


 
 
 Eden Cooper, LP
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 City of Arlington, Texas; James Holgersson;
 Edward Dryden; Sheri Capehart; Mel LeBlanc; and
 Kathryn Wilemon
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 348th District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

         
In three issues, appellant Eden Cooper, LP appeals the trial court’s orders granting
the pleas to the jurisdiction of appellee City of Arlington, Texas (the City)
and of appellees James Holgersson, Edward Dryden,
Sheri Capehart, Mel LeBlanc, and Kathryn Wilemon (the individual appellees).[2]  We affirm.

Background
Facts

         
In early 2009, Carrizo Oil & Gas Inc. (Carrizo) applied to the City’s
planning and zoning commission for a specific use permit (SUP).[3]  Carrizo wanted to drill for gas on
the Shelton Fannin Farms development, a 3.68-acre
tract that was originally zoned for residential use.  Carrizo initially
proposed two transportation routes to the potential drilling site.  Both
routes would have used Kuykendall Road, a two-lane, undivided road.  Some
landowners expressed opposition to Carrizo’s application.  After the City
sent notices concerning the application to several groups and held a public
hearing, the commission denied the application.

         
In response to the commission’s denial of its SUP application, Carrizo asked
the city council to grant an SUP.[4] 
The City held another public hearing.  After the hearing, in August 2009,
the council passed ordinance number 09-040, which granted an SUP to Carrizo for
gas drilling and directed the drilling to be in compliance with the
ordinance.  Among other provisions, the ordinance stated that drilling was
to comply with the conditions of “Exhibit B,” which was attached to the
ordinance.  Exhibit B stated in part, “Ingress and egress to the site will
be on future Eden Road off of South Cooper Street.”

         
In June 2010, the City approved five gas well permits for Carrizo.[5]  Carrizo and Eden Cooper negotiated
on the sale of a right-of-way across Eden Cooper’s land for the purpose of
Carrizo’s reaching the drilling site, but according to a statement made in a
city council meeting, the negotiations became “very challenging . . . to a
point where Carrizo had to go look somewhere else.”[6]  Thus, in December 2010, Carrizo
asked the City to amend the permits so that Carrizo could use an alternate
transportation route to the drilling site.  A staff report submitted
before the city’s council’s consideration of Carrizo’s request explained,

The current transportation route . . . utilizes the
intersection of FM 157 and future Eden Road.  The proposed route . . .
travels from FM 157 to North Peyco Drive and gains
access to Eden Road via a 24-foot wide access road. . . .

         
The requested amendment will eliminate the need for Carrizo to utilize future
Eden Road.  A result of this change is that the City will not obtain the
right-of-way dedication for the portion of Eden Road the applicant promised to
secure.  In addition, North Peyco Drive has a
very low score of 45.19 on the City’s overall condition index (OCI). . . .  [A]n OCI rating
of less than 60 indicates roadway failure.

         
On December 14, 2010, the city council passed resolution number 10-373, which
granted Carrizo’s application to amend the five permits.  The amended
permits stated, under the title “Fannin Farms Drill
Site Permit Stipulations,” that Carrizo was to use North Peyco
Drive to access the drilling site.

         
In January 2011, Eden Cooper filed an application for a temporary restraining
order, temporary injunction, and permanent injunction against Carrizo, asking
the trial court to prevent Carrizo from, among other actions, using North Peyco Drive to travel to and from the drilling site.
 Eden Cooper contended that Carrizo’s plan to access its site through
North Peyco Drive violated several parts of the
City’s subdivision regulations.  On Eden Cooper’s behalf, a planning and
zoning consultant opined in an affidavit that the amended route to the site
would create an “unsafe roadway condition for . . . area residents” and that
the City had not complied with its ordinances while amending the route. 
The consultant stated in part, “Only the Gas Well Drill Permit was amended and
the corresponding Specific Use Permit . . . was not amended.”  The trial
court initially signed, but later dissolved, a temporary restraining order.

         
In February 2011, Eden Cooper sued appellees.  In its original petition,
Eden Cooper alleged that by revising Carrizo’s path to its drilling site, the
City had avoided “justly compensating [Eden Cooper] for the Eden Road
right-of-way.”  Eden Cooper claimed that it had invested money in removing
timber and fencing in preparation for the construction of a road across its
property.[7]
 The petition included claims against the City for a “taking” of
private property without adequate compensation under the Texas constitution[8] and for a declaratory judgment[9] that the City had acted illegally when it
had amended Carrizo’s permits.  Eden Cooper also brought declaratory
judgment claims against the individual appellees, alleging that they had also
acted illegally.  For example, Eden Cooper asserted that three city
council members had a conflict of interest because they served on the board of
the Arlington Tomorrow Foundation, which, according to Eden Cooper, had
received large payments from oil companies.

         
Appellees answered Eden Cooper’s suit by asserting a general denial and
contending, among other arguments, that Eden Cooper had not established
standing.  In May 2011, appellees filed pleas to the jurisdiction, arguing
again that Eden Cooper lacked standing and also contending that they were
immune from Eden Cooper’s claims.  With regard to Eden Cooper’s
declaratory judgment claims, appellees asserted that Eden Cooper did not have
standing to complain about the amendments of the permits because the amendments
did not affect Eden Cooper’s property interest and because Eden Cooper’s
interest, if any, was no different than the general public’s interest.[10]

         
Eden Cooper filed a motion for summary judgment on some of its claims, and it
also filed a response to appellees’ pleas to the jurisdiction.  In its
response, Eden Cooper contended that it had standing because it is the “owner
of property affected by the challenged actions of the Defendants.”  Eden
Cooper also amended its petition on more than one occasion.  Eden Cooper’s
third amended petition, like the original petition, asserted claims for a
regulatory taking and for declarations that the City had violated the law by
issuing the amended permits and that the individual appellees had also violated
the law and had acted with conflicts of interest.  In its declaratory
judgment claims contained within its third amended petition, Eden Cooper sought
declarations that

·        the City, Capehart, Wilemon, and LeBlanc
had amended Carrizo’s permits in violation of chapter 211 of the local
government code and in violation of the city’s ordinances related to gas
drilling and zoning;

 

·        Capehart, Wilemon,
and LeBlanc had acted with conflicts of interest by voting on the amendments to
Carrizo’s permits, and their votes had violated sections of the City’s design
criteria manual for roadways, therefore creating a “substantial public safety
issue” on North Peyco Drive; and

 

·       
Holgersson and Dryden had
violated state law and city ordinances by issuing the amended permits.

         
The trial court granted the individual appellees’ plea to the jurisdiction and
dismissed Eden Cooper’s claims against them.  The court also granted the
City’s pleas to the jurisdiction and dismissed “the claims presented in Count
II of Eden Cooper, LP’s petition.”[11] 
Eden Cooper brought this appeal.

Standing

         
In its first issue, Eden Cooper challenges the trial court’s decision to grant
appellees’ pleas to the jurisdiction on the ground that Eden Cooper did not
have standing to bring claims for declaratory and injunctive relief.  A
plea to the jurisdiction is a dilatory plea used to defeat a cause of action
without regard to whether the claims have merit.  Bland ISD v. Blue, 34 S.W.3d 547,
554 (Tex. 2000); City of Fort Worth v. Shilling, 266 S.W.3d
97, 101 (Tex. App.—Fort Worth 2008, pet. denied).  The plea challenges the
trial court’s subject matter jurisdiction.  Blue, 34 S.W.3d at 554.  Whether
the trial court had subject matter jurisdiction is a question of law that we
review de novo.  Tex.
Natural Res. Conservation Comm’n v. IT–Davy, 74 S.W.3d 849, 855 (Tex. 2002).  A plaintiff’s
standing to bring a suit is a necessary component of subject matter
jurisdiction.  Maddox v. Vantage Energy, LLC, 361 S.W.3d 752, 756 (Tex. App.—Fort Worth 2012, pet. denied); Kohout v. City of Fort Worth, 292 S.W.3d 703, 707 (Tex. App.—Fort Worth 2009, no pet.).

         
The plaintiff has the burden of alleging facts that affirmatively establish the
trial court’s subject matter jurisdiction.  Tex. Ass’n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Shilling, 266 S.W.3d at 101.  We construe the pleadings liberally in
favor of the plaintiff, look to the pleader’s intent, and accept the pleadings’
factual allegations as true.  Tex. Dep’t of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226
(Tex. 2004).  If a plea to the jurisdiction challenges the
existence of jurisdictional facts, as in this case, we consider relevant
evidence submitted by the parties that is necessary to resolve the
jurisdictional issues.  Id. at 227; Blue, 34
S.W.3d at 555.  “If the relevant evidence
is undisputed or fails to raise a fact question on the jurisdictional issue,
the trial court rules on the plea to the jurisdiction as a matter of
law.”  Clifton v. Walters, 308 S.W.3d 94,
98 (Tex. App.—Fort Worth 2010, pet. denied).

         
Under the Uniform Declaratory Judgments Act (UDJA), a
person whose legal relations are affected by a statute or municipal ordinance
“may have determined any question of construction or validity . . . and obtain
a declaration of rights, status, or other legal relations thereunder.” 
Tex. Civ. Prac. & Rem. Code
Ann. § 37.004(a).  A declaratory judgment, however, is appropriate
“only if a justiciable controversy exists as to the rights and status of the
parties and the controversy will be resolved by the declaration sought.”  Bonham
State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex.
1995); see Brooks v. Northglen Ass’n,
141 S.W.3d 158, 163–64 (Tex. 2004) (“A declaratory
judgment requires a justiciable controversy as to the rights and status of
parties actually before the court for adjudication, and the declaration sought
must actually resolve the controversy.”); City of Euless v. Dallas/Fort
Worth Int’l Airport Bd., 936 S.W.2d 699, 702–03
(Tex. App.—Dallas 1996, writ denied) (stating that the UDJA
is a procedural device for deciding cases already within a court’s jurisdiction
rather than a legislative enlargement of a court’s authority to resolve cases).

         
A person’s assertion that the government has acted illegally, in itself, is
usually insufficient to confer standing.  Andrade v. NAACP of Austin,
345 S.W.3d 1, 7 (Tex. 2011); see City of San
Antonio v. Stumburg, 70 Tex. 366, 368, 7 S.W.
754, 755 (1888) (“[N]o action lies to restrain an interference with a mere
public right, at the suit of an individual who has not suffered or is not
threatened with some damage peculiar to himself.”).  Rather, to have
standing, a plaintiff must demonstrate that it “possesses an interest in a
conflict distinct from that of the general public, such that the defendant’s actions
have caused the plaintiff some particular injury.”  Clifton, 308 S.W.3d at 98; see Kohout,
292 S.W.3d at 707 (“Only a litigant who has suffered
an injury has standing.”).  In analyzing issues of
standing, we focus on whether a party has a sufficient relationship with the
lawsuit so as to have a justiciable interest in the outcome.  Fantasy
Ranch, Inc. v. City of Arlington, 193 S.W.3d 605,
611 (Tex. App.—Fort Worth 2006, pet. denied).  Under this standard, a
contingent, speculative, or intended injury is insufficient to confer standing
when the plaintiff has not actually been injured.  See M.D. Anderson
Cancer Ctr. v. Novak, 52 S.W.3d 704, 707–08 (Tex.
2001); Empire Life Ins. Co. of Am. v. Moody, 584 S.W.2d
855, 858 (Tex. 1979) (explaining that a “judgment under the [UDJA] depends on a finding that the issues are not
hypothetical or contingent, and the questions presented must resolve an actual
controversy”).  The “irreducible . . . minimum” of standing contains three
elements:  (1) the plaintiff must have suffered an “injury in fact,” an
invasion of a legally protected interest that is concrete and particularized,
and that is actual or imminent rather than conjectural or hypothetical; (2) the
injury is fairly traceable to the challenged action of the defendant and not
the independent action of a third party not before the court; and (3) it must
be likely that the injury will be redressed by a favorable decision.  Save
Our Springs Alliance, Inc. v. City of Dripping Springs, 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied); see
OHBA Corp. v. City of Carrollton, 203 S.W.3d 1, 5 (Tex. App.—Dallas 2006, pet. denied) (“To
constitute a justiciable controversy, there must exist a real and substantial
controversy involving a genuine conflict of tangible interests and not merely a
theoretical dispute.”).

         
Even if the amendments of Carrizo’s permits, and the resulting change of the
route for Carrizo’s access to its drilling site, was accomplished by a process
that violated the law, Eden Cooper has not established that it has been
particularly and distinctly injured by the amendments; that there is any
imminent, threatened injury that is not theoretical or hypothetical; or that
any injury would be redressed by a favorable decision.  See
DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299,
304–05 (Tex. 2008); Brooks, 141 S.W.3d at
163–64; Save Our Springs Alliance, Inc., 304 S.W.3d
at 878.  Eden Cooper argues that appellees’ actions allowed Carrizo
“to access the drill site without the necessity of building a road using Eden
Cooper’s property.”  This alleged injury to Eden Cooper, however, is
conjectural in at least two ways.

         
First, it is contingent upon assumptions that if the City had not amended the
permits at all, Carrizo and Eden Cooper would have completed a sale of Eden
Cooper’s land, Eden Cooper would have received money from that sale, and
Carrizo would have therefore actually used that land to reach its drilling
site.  In other words, Eden Cooper’s alleged injury is contingent upon an
assumption that if Carrizo was faced with the options of either buying land
from Eden Cooper or not drilling on Shelton Fannin
Farms at all, Carrizo would have chosen to buy the land.

         
Second, Eden Cooper’s argument about its alleged injury presupposes that if the
method of amending the permits and of altering Carrizo’s transportation route
was declared to be illegal, the City would not thereafter amend the permits and
alter the route (using North Peyco Drive or possibly
another route) by a legal method, which would have still eliminated any
necessity of Carrizo’s building a road on Eden Cooper’s land.  Eden Cooper
challenges only the way that the City amended Carrizo’s route to its
drilling site, not that the City had the general authority to amend
it.  Specifically, Eden Cooper contends that ordinance 09-040 should have
been amended to alter the route and that amending the drilling permits was
insufficient to do so.

         
In summary, although Eden Cooper argues that it has a justiciable interest
because it “owns the property where the ‘future Eden Road’ was to be
constructed,” Eden Cooper’s alleged injury is too speculative because there is
no guarantee that the road would have been constructed, or that Eden Cooper
would have been compensated by Carrizo, if appellees had not taken their
allegedly illegal actions.  Eden Cooper recognized this principle in the
trial court when it alleged that appellees’ actions “deprived [it] of the anticipated
use and enjoyment of its property which was designated to be used as the
future site of Eden Road.”  [Emphasis added.]  Although the purpose
of the UDJA is to “settle and to afford relief from
uncertainty and insecurity with respect to rights, status, and other legal
relations,” see Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b), there is no legal
relationship between appellees and Eden Cooper that is different than the
relationship that the general public had with the City.[12]  See Blue, 34 S.W.3d at 555–56 (stating that plaintiffs must show that
they have suffered a particularized injury distinct from that suffered by the
general public in order to have standing to challenge a government action); Cernosek Enters., Inc. v. City of Mont Belvieu, 338 S.W.3d 655, 666
(Tex. App.—Houston [1st Dist.] 2011, no pet.) (“While
Hill Lumber alleges damage to the community, it has not demonstrated that this
injury affects it in some special or unique way that is different from the
injury suffered by the community at large.”).[13]  For the same reasons, Eden Cooper
does not have standing to bring its claim for injunctive relief.  See OHBA Corp., 203 S.W.3d
at 6 (“OHBA’s request for injunctive relief is no
different [from its UDJA claim] because it is based
on the declaratory relief OHBA seeks and there is no
‘real controversy between the parties, which . . . will be actually determined
by the judicial declaration sought.’”); see also Camarena
v. Tex. Emp’t Comm’n,
754 S.W.2d 149, 151 (Tex. 1988) (vacating an
injunction because it was based on a “hypothetical situation”).

         
For all of these reasons, we hold that the trial court did not err by granting
appellees’ pleas to the jurisdiction on the basis that Eden Cooper lacks standing
to assert its claims for declaratory judgments and for injunctive relief. 
We overrule Eden Cooper’s first issue, and because our resolution of that issue
is dispositive, we decline to address Eden Cooper’s other issues.  See
Tex. R. App. P. 47.1; Binzer v. Alvey, 359 S.W.3d 364, 367
(Tex. App.—Fort Worth 2012, no pet.).

Conclusion

         
Having overruled Eden Cooper’s first, dispositive issue, we affirm the trial
court’s orders granting appellees’ pleas to the jurisdiction.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

 

DELIVERED:  June 28,
2012














[1]See
Tex. R. App. P. 47.4.





[2]Holgersson is the City’s city manager; Dryden is the City’s
building official; and Capehart, LeBlanc, and Wilemon are city council members.





[3]An
SUP “provides a means for developing certain uses . . . in a manner in which
the specific use will be compatible with adjacent property and consistent with
the character of the neighborhood.”





[4]One
of the City’s ordinances states, “In any . . . specific use permit [decision], . . . the Planning and Zoning Commission makes a
recommendation to the City Council[,] who has the final authority.”





[5]Approved
zoning is required before the City may issue a gas well permit.





[6]A
document that Eden Cooper filed in the trial court states, “Carrizo negotiated
with Eden Cooper about purchasing the right-of-way . . . , but no agreement
could be reached.”  Evidence presented at the hearing on appellees’ pleas
to the jurisdiction establishes that through a letter, Carrizo offered to
purchase land from Eden Cooper at a rate of $2.95 per square foot.  The
bottom of the letter was signed by purported representatives of both Carrizo
and Eden Cooper.  Alleged representatives for both entities likewise
signed a “Commercial Contract of Sale,” which stated that the purchase price
for the property was $80,988.  Nonetheless, after Eden Cooper determined
that it wanted a much higher price for the sale of the land than the price
contained in the contract, it did not close with Carrizo on the sale of the
property.





[7]Eden
Cooper has not directed us to any evidence in the record that substantiates
this claim, and Eden Cooper has not particularly argued in its briefing that it
has standing based upon preparing for the construction of the road.  In
the individual appellees’ brief, they state that Eden Cooper cleared its land
in November 2010, after Eden Cooper’s negotiations with Carrizo had failed and
after Carrizo had applied for amended permits to create an altered
transportation route.





[8]See
Tex. Const. art. 1, § 17(a).





[9]See
Tex. Civ. Prac. & Rem. Code
Ann. §§ 37.001–.011 (West 2008).





[10]Carrizo
also filed a plea to the jurisdiction on the ground of standing, but Carrizo is
not a party to this appeal.  The City joined Carrizo’s plea to the
jurisdiction and later filed its own plea to the jurisdiction.





[11]The
parties agree, therefore, that the trial court did not dismiss Eden Cooper’s
regulatory taking claim against the City.





[12]Eden
Cooper cites two supreme court cases to contend that
its declaratory judgment claims are proper, but neither of those cases concern
the issue of standing.  See Tex. Dep’t of Ins. v. Reconveyance
Servs.,
Inc., 306 S.W.3d 256 (Tex. 2010); City of El
Paso v. Heinrich, 284 S.W.3d 366 (Tex. 2009).





[13]Deposition
testimony from Eden Cooper’s representative Daniel Fernandez establishes that
Eden Cooper was opposed to Carrizo’s access route on North Peyco
Drive because of Eden Cooper’s belief that the route “did not provide for the .
. . health[,] safety[,] and welfare of the general public.” 
[Emphasis added.]  Fernandez went on to testify that Eden Cooper’s concern
was that appellees’ acts were detrimental because “the public purpose was
served by a negotiated deal with Carrizo.”  Under the cases cited above,
these assertions, and allegations similar to these, are insufficient to confer
standing.