

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00439-CV

EDEN COOPER, LP                                                                 APPELLANT

V.

CITY OF ARLINGTON, TEXAS;                                                   APPELLEES
JAMES HOLGERSSON; EDWARD
DRYDEN; SHERI CAPEHART; MEL
LEBLANC; AND KATHRYN
WILEMON

----------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In three issues, appellant Eden Cooper, LP appeals the trial court's orders

granting the pleas to the jurisdiction of appellee City of Arlington, Texas (the City)

---

[1]*See* Tex. R. App. P. 47.4.

and of appellees James Holgersson, Edward Dryden, Sheri Capehart, Mel LeBlanc, and Kathryn Wilemon (the individual appellees).[2]  We affirm.

**Background Facts**

In early 2009, Carrizo Oil & Gas Inc. (Carrizo) applied to the City's planning and zoning commission for a specific use permit (SUP).[3]  Carrizo wanted to drill for gas on the Shelton Fannin Farms development, a 3.68-acre tract that was originally zoned for residential use.  Carrizo initially proposed two transportation routes to the potential drilling site.  Both routes would have used Kuykendall Road, a two-lane, undivided road.  Some landowners expressed opposition to Carrizo's application.  After the City sent notices concerning the application to several groups and held a public hearing, the commission denied the application.

In response to the commission's denial of its SUP application, Carrizo asked the city council to grant an SUP.[4]  The City held another public hearing. After the hearing, in August 2009, the council passed ordinance number 09-040, which granted an SUP to Carrizo for gas drilling and directed the drilling to be in

---

[2]Holgersson is the City's city manager; Dryden is the City's building official; and Capehart, LeBlanc, and Wilemon are city council members.

[3]An SUP "provides a means for developing certain uses . . . in a manner in which the specific use will be compatible with adjacent property and consistent with the character of the neighborhood."

[4]One of the City's ordinances states, "In any . . . specific use permit [decision], . . . the Planning and Zoning Commission makes a recommendation to the City Council[,] who has the final authority."

compliance with the ordinance. Among other provisions, the ordinance stated that drilling was to comply with the conditions of "Exhibit B," which was attached to the ordinance. Exhibit B stated in part, "Ingress and egress to the site will be on future Eden Road off of South Cooper Street."

In June 2010, the City approved five gas well permits for Carrizo.[5] Carrizo and Eden Cooper negotiated on the sale of a right-of-way across Eden Cooper's land for the purpose of Carrizo's reaching the drilling site, but according to a statement made in a city council meeting, the negotiations became "very challenging . . . to a point where Carrizo had to go look somewhere else."[6] Thus, in December 2010, Carrizo asked the City to amend the permits so that Carrizo could use an alternate transportation route to the drilling site. A staff report submitted before the city's council's consideration of Carrizo's request explained,

> The current transportation route . . . utilizes the intersection of FM 157 and future Eden Road. The proposed route . . . travels from FM 157 to North Peyco Drive and gains access to Eden Road via a 24-foot wide access road. . . .

---

[5]Approved zoning is required before the City may issue a gas well permit.

[6]A document that Eden Cooper filed in the trial court states, "Carrizo negotiated with Eden Cooper about purchasing the right-of-way . . . , but no agreement could be reached." Evidence presented at the hearing on appellees' pleas to the jurisdiction establishes that through a letter, Carrizo offered to purchase land from Eden Cooper at a rate of $2.95 per square foot. The bottom of the letter was signed by purported representatives of both Carrizo and Eden Cooper. Alleged representatives for both entities likewise signed a "Commercial Contract of Sale," which stated that the purchase price for the property was $80,988. Nonetheless, after Eden Cooper determined that it wanted a much higher price for the sale of the land than the price contained in the contract, it did not close with Carrizo on the sale of the property.

3

The requested amendment will eliminate the need for Carrizo to utilize future Eden Road. A result of this change is that the City will not obtain the right-of-way dedication for the portion of Eden Road the applicant promised to secure. In addition, North Peyco Drive has a very low score of 45.19 on the City's overall condition index (OCI). . . . [A]n OCI rating of less than 60 indicates roadway failure.

On December 14, 2010, the city council passed resolution number 10-373, which granted Carrizo's application to amend the five permits. The amended permits stated, under the title "Fannin Farms Drill Site Permit Stipulations," that Carrizo was to use North Peyco Drive to access the drilling site.

In January 2011, Eden Cooper filed an application for a temporary restraining order, temporary injunction, and permanent injunction against Carrizo, asking the trial court to prevent Carrizo from, among other actions, using North Peyco Drive to travel to and from the drilling site. Eden Cooper contended that Carrizo's plan to access its site through North Peyco Drive violated several parts of the City's subdivision regulations. On Eden Cooper's behalf, a planning and zoning consultant opined in an affidavit that the amended route to the site would create an "unsafe roadway condition for . . . area residents" and that the City had not complied with its ordinances while amending the route. The consultant stated in part, "Only the Gas Well Drill Permit was amended and the corresponding Specific Use Permit . . . was not amended." The trial court initially signed, but later dissolved, a temporary restraining order.

In February 2011, Eden Cooper sued appellees. In its original petition, Eden Cooper alleged that by revising Carrizo's path to its drilling site, the City

4

had avoided "justly compensating [Eden Cooper] for the Eden Road right-of-way." Eden Cooper claimed that it had invested money in removing timber and fencing in preparation for the construction of a road across its property.[7] The petition included claims against the City for a "taking" of private property without adequate compensation under the Texas constitution[8] and for a declaratory judgment[9] that the City had acted illegally when it had amended Carrizo's permits. Eden Cooper also brought declaratory judgment claims against the individual appellees, alleging that they had also acted illegally. For example, Eden Cooper asserted that three city council members had a conflict of interest because they served on the board of the Arlington Tomorrow Foundation, which, according to Eden Cooper, had received large payments from oil companies.

Appellees answered Eden Cooper's suit by asserting a general denial and contending, among other arguments, that Eden Cooper had not established standing. In May 2011, appellees filed pleas to the jurisdiction, arguing again

---

[7]Eden Cooper has not directed us to any evidence in the record that substantiates this claim, and Eden Cooper has not particularly argued in its briefing that it has standing based upon preparing for the construction of the road. In the individual appellees' brief, they state that Eden Cooper cleared its land in November 2010, after Eden Cooper's negotiations with Carrizo had failed and after Carrizo had applied for amended permits to create an altered transportation route.

[8]*See* Tex. Const. art. 1, § 17(a).

[9]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (West 2008).

that Eden Cooper lacked standing and also contending that they were immune from Eden Cooper's claims. With regard to Eden Cooper's declaratory judgment claims, appellees asserted that Eden Cooper did not have standing to complain about the amendments of the permits because the amendments did not affect Eden Cooper's property interest and because Eden Cooper's interest, if any, was no different than the general public's interest.[10]

Eden Cooper filed a motion for summary judgment on some of its claims, and it also filed a response to appellees' pleas to the jurisdiction. In its response, Eden Cooper contended that it had standing because it is the "owner of property affected by the challenged actions of the Defendants." Eden Cooper also amended its petition on more than one occasion. Eden Cooper's third amended petition, like the original petition, asserted claims for a regulatory taking and for declarations that the City had violated the law by issuing the amended permits and that the individual appellees had also violated the law and had acted with conflicts of interest. In its declaratory judgment claims contained within its third amended petition, Eden Cooper sought declarations that

- the City, Capehart, Wilemon, and LeBlanc had amended Carrizo's permits in violation of chapter 211 of the local government code and in violation of the city's ordinances related to gas drilling and zoning;

- Capehart, Wilemon, and LeBlanc had acted with conflicts of interest by voting on the amendments to Carrizo's permits, and their votes had

_____

[10]Carrizo also filed a plea to the jurisdiction on the ground of standing, but Carrizo is not a party to this appeal. The City joined Carrizo's plea to the jurisdiction and later filed its own plea to the jurisdiction.

6

violated sections of the City's design criteria manual for roadways, therefore creating a "substantial public safety issue" on North Peyco Drive; and

- Holgersson and Dryden had violated state law and city ordinances by issuing the amended permits.

The trial court granted the individual appellees' plea to the jurisdiction and dismissed Eden Cooper's claims against them. The court also granted the City's pleas to the jurisdiction and dismissed "the claims presented in Count II of Eden Cooper, LP's petition."[11]  Eden Cooper brought this appeal.

## Standing

In its first issue, Eden Cooper challenges the trial court's decision to grant appellees' pleas to the jurisdiction on the ground that Eden Cooper did not have standing to bring claims for declaratory and injunctive relief.  A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims have merit.  *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *City of Fort Worth v. Shilling*, 266 S.W.3d 97, 101 (Tex. App.—Fort Worth 2008, pet. denied).  The plea challenges the trial court's subject matter jurisdiction.  *Blue*, 34 S.W.3d at 554.  Whether the trial court had subject matter jurisdiction is a question of law that we review de novo.  *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).  A plaintiff's standing to bring a suit is a necessary component of subject matter jurisdiction.

---

[11]The parties agree, therefore, that the trial court did not dismiss Eden Cooper's regulatory taking claim against the City.

7

*Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756 (Tex. App.—Fort Worth 2012, pet. denied); *Kohout v. City of Fort Worth*, 292 S.W.3d 703, 707 (Tex. App.—Fort Worth 2009, no pet.).

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Shilling*, 266 S.W.3d at 101. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If a plea to the jurisdiction challenges the existence of jurisdictional facts, as in this case, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id.* at 227; *Blue*, 34 S.W.3d at 555. "If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Clifton v. Walters*, 308 S.W.3d 94, 98 (Tex. App.—Fort Worth 2010, pet. denied).

Under the Uniform Declaratory Judgments Act (UDJA), a person whose legal relations are affected by a statute or municipal ordinance "may have determined any question of construction or validity . . . and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). A declaratory judgment, however, is appropriate "only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v.*

8

*Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *see Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004) ("A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy."); *City of Euless v. Dallas/Fort Worth Int'l Airport Bd.*, 936 S.W.2d 699, 702–03 (Tex. App.—Dallas 1996, writ denied) (stating that the UDJA is a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's authority to resolve cases).

A person's assertion that the government has acted illegally, in itself, is usually insufficient to confer standing. *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011); *see City of San Antonio v. Stumburg*, 70 Tex. 366, 368, 7 S.W. 754, 755 (1888) ("[N]o action lies to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself."). Rather, to have standing, a plaintiff must demonstrate that it "possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Clifton*, 308 S.W.3d at 98; *see Kohout*, 292 S.W.3d at 707 ("Only a litigant who has suffered an injury has standing."). In analyzing issues of standing, we focus on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in the outcome. *Fantasy Ranch, Inc. v. City of Arlington*, 193 S.W.3d 605, 611 (Tex. App.—Fort Worth 2006, pet. denied). Under this standard, a contingent, speculative, or intended injury is

9

insufficient to confer standing when the plaintiff has not actually been injured. *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707–08 (Tex. 2001); *Empire Life Ins. Co. of Am. v. Moody*, 584 S.W.2d 855, 858 (Tex. 1979) (explaining that a "judgment under the [UDJA] depends on a finding that the issues are not hypothetical or contingent, and the questions presented must resolve an actual controversy"). The "irreducible . . . minimum" of standing contains three elements: (1) the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest that is concrete and particularized, and that is actual or imminent rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant and not the independent action of a third party not before the court; and (3) it must be likely that the injury will be redressed by a favorable decision. *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied); *see OHBA Corp. v. City of Carrollton*, 203 S.W.3d 1, 5 (Tex. App.—Dallas 2006, pet. denied) ("To constitute a justiciable controversy, there must exist a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute.").

Even if the amendments of Carrizo's permits, and the resulting change of the route for Carrizo's access to its drilling site, was accomplished by a process that violated the law, Eden Cooper has not established that it has been particularly and distinctly injured by the amendments; that there is any imminent, threatened injury that is not theoretical or hypothetical; or that any injury would be

10

redressed by a favorable decision. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008); *Brooks*, 141 S.W.3d at 163–64; *Save Our Springs Alliance, Inc.*, 304 S.W.3d at 878. Eden Cooper argues that appellees' actions allowed Carrizo "to access the drill site without the necessity of building a road using Eden Cooper's property." This alleged injury to Eden Cooper, however, is conjectural in at least two ways.

First, it is contingent upon assumptions that if the City had not amended the permits at all, Carrizo and Eden Cooper would have completed a sale of Eden Cooper's land, Eden Cooper would have received money from that sale, and Carrizo would have therefore actually used that land to reach its drilling site. In other words, Eden Cooper's alleged injury is contingent upon an assumption that if Carrizo was faced with the options of either buying land from Eden Cooper or not drilling on Shelton Fannin Farms at all, Carrizo would have chosen to buy the land.

Second, Eden Cooper's argument about its alleged injury presupposes that if the method of amending the permits and of altering Carrizo's transportation route was declared to be illegal, the City would not thereafter amend the permits and alter the route (using North Peyco Drive or possibly another route) by a legal method, which would have still eliminated any necessity of Carrizo's building a road on Eden Cooper's land. Eden Cooper challenges only the *way* that the City amended Carrizo's route to its drilling site, not that the City had the general *authority* to amend it. Specifically, Eden Cooper contends that ordinance 09-040

11

should have been amended to alter the route and that amending the drilling permits was insufficient to do so.

In summary, although Eden Cooper argues that it has a justiciable interest because it "owns the property where the 'future Eden Road' was to be constructed," Eden Cooper's alleged injury is too speculative because there is no guarantee that the road would have been constructed, or that Eden Cooper would have been compensated by Carrizo, if appellees had not taken their allegedly illegal actions. Eden Cooper recognized this principle in the trial court when it alleged that appellees' actions "deprived [it] of the *anticipated use and enjoyment* of its property which was designated to be used as the future site of Eden Road." [Emphasis added.] Although the purpose of the UDJA is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations," *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b), there is no legal relationship between appellees and Eden Cooper that is different than the relationship that the general public had with the City.[12] *See Blue*, 34 S.W.3d at 555–56 (stating that plaintiffs must show that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action); *Cernosek Enters., Inc.*

---

[12]Eden Cooper cites two supreme court cases to contend that its declaratory judgment claims are proper, but neither of those cases concern the issue of standing. *See Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256 (Tex. 2010); *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009).

*v. City of Mont Belvieu*, 338 S.W.3d 655, 666 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("While Hill Lumber alleges damage to the community, it has not demonstrated that this injury affects it in some special or unique way that is different from the injury suffered by the community at large.").[13]  For the same reasons, Eden Cooper does not have standing to bring its claim for injunctive relief.  *See OHBA Corp.*, 203 S.W.3d at 6 ("OHBA's request for injunctive relief is no different [from its UDJA claim] because it is based on the declaratory relief OHBA seeks and there is no 'real controversy between the parties, which . . . will be actually determined by the judicial declaration sought.'"); *see also Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (vacating an injunction because it was based on a "hypothetical situation").

For all of these reasons, we hold that the trial court did not err by granting appellees' pleas to the jurisdiction on the basis that Eden Cooper lacks standing to assert its claims for declaratory judgments and for injunctive relief.  We overrule Eden Cooper's first issue, and because our resolution of that issue is dispositive, we decline to address Eden Cooper's other issues.  *See* Tex. R. App.

---

[13]Deposition testimony from Eden Cooper's representative Daniel Fernandez establishes that Eden Cooper was opposed to Carrizo's access route on North Peyco Drive because of Eden Cooper's belief that the route "did not provide for the . . . health[,] safety[,] and welfare *of the general public.*" [Emphasis added.]  Fernandez went on to testify that Eden Cooper's concern was that appellees' acts were detrimental because "the public purpose was served by a negotiated deal with Carrizo."  Under the cases cited above, these assertions, and allegations similar to these, are insufficient to confer standing.

P. 47.1; *Binzer v. Alvey*, 359 S.W.3d 364, 367 (Tex. App.—Fort Worth 2012, no pet.).

## Conclusion

Having overruled Eden Cooper's first, dispositive issue, we affirm the trial court's orders granting appellees' pleas to the jurisdiction.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED:  June 28, 2012

14