

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00210-CV

JOSEPH LEON MADDOX, PATTI LYNN MADDOX, AND LINDA FAYE WEBER     APPELLANTS

V.

VANTAGE ENERGY, LLC AND THE CAFFEY GROUP, LLC     APPELLEES

----------

## FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

## I. INTRODUCTION

Appellants Joseph Leon Maddox, Patti Lynn Maddox, and Linda Faye Weber sued Appellees Vantage Energy, LLC and The Caffey Group, LLC, pleading causes of action for breach of contract, promissory estoppel, and negligent misrepresentation. The trial court granted summary judgment for Appellees (collectively referred to as Vantage) on all of Appellants' claims.

Appellants perfected this appeal, challenging the summary judgment in ten issues.[1] Because we hold that Appellants lack standing to sue for breach of contract and promissory estoppel, we will dismiss Appellants' appeal of those claims and will render judgment accordingly. Because we hold that no summary judgment evidence exists that Vantage made any material misrepresentations of existing fact, we will affirm the trial court's summary judgment for Vantage on Appellants' negligent misrepresentation claim.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellants are homeowners in southwest Fort Worth. During the summer of 2008, oil and gas companies began approaching individual homeowners in southwest Fort Worth to attempt to obtain leases of the minerals under the homeowners' properties. Some property owners in southwest Fort Worth formed a nonprofit, unincorporated association[2] named Southwest Fort Worth Alliance, or SFWA, for the purpose of negotiating the best possible lease terms for the largest possible group of lessors. Eventually, Vantage reached an agreement with SFWA that included a "uniform oil and gas lease form."

Appellants assert that a written contract exists between Vantage and SFWA; Appellants claim the contract consists of a series of approximately eleven

---

[1]Although the table of contents in Appellants' brief lists ten issues, they are not segregated in Appellants' analysis. For ease of reference, however, we refer to the ten issues as numbered in Appellants' table of contents.

[2]*See* Tex. Bus. Orgs. Code Ann. §§ 252.001–.017 (West 2011). A nonprofit association is defined as "an unincorporated organization . . . consisting of three or more members, joined by mutual consent for a common, nonprofit purpose." *Id*. § 252.001(2).

emails—and the attachments to those emails, including the uniform oil and gas lease form—that were exchanged between Vantage and an individual acting for SFWA.[3] Based on the emails and the uniform oil and gas lease form, SFWA publicized that Vantage had "won the bid for endorsement" of SFWA and was SFWA's "preferred and endorsed Natural Gas Developer." Appellants concede in their brief that SFWA did not possess authority to, and did not, negotiate individual leases for Appellants or for anyone; instead, Appellants claim that the contract between Vantage and SFWA was "a contract for an **endorsement** of Vantage and its offer."

The uniform oil and gas lease form is a template; it provides blanks for the date of execution of the lease, the name of the lessor, and for the legal description and address of the property covered by the lease.[4] The uniform oil and gas lease form also states that each individual lessor is not obligated to sign the form lease but instead has the right to negotiate his or her own terms with

---

[3]Appellants claim the eleven-emails-and-attachments contract was executed by Vantage and SFWA by virtue of the Texas Uniform Electronic Transactions Act, which provides that an electronic signature shall be given the same legal force as an ink signature. *See* Tex. Bus. & Com. Code Ann. § 322.007 (West 2009). We do not address this contention because, as set forth below, even assuming a contract existed between Vantage and SFWA, Appellants are not third-party beneficiaries of the contract and have no standing to sue to enforce it. *See* Tex. R. App. P. 47.1 (providing that appellate court must address only issues necessary to final disposition of appeal).

[4]The uniform oil and gas lease form provides in part, "This LEASE AGREEMENT (this "Lease") is made as of the ___ day of _____, 2008, between the Lessor(s) whose legal description and address are set forth on Schedule-1 attached hereto, and Lessee _____, whose address is _____, Fort Worth, Texas _____." The uniform oil and gas lease form is not executed by anyone.

3

any oil and gas company and individually bears the responsibility of investigating the lease and its terms.[5]

Vantage began obtaining leases from mineral owners in the SFWA neighborhoods. Between 4,000 and 7,500 leases were obtained; the record does not reflect if these lessors negotiated to modify the uniform oil and gas lease terms or not. Approximately one month later, however, as the price of natural gas fell, Vantage suspended its urban leasing activities. Appellants filed the instant suit, seeking to compel Vantage to offer them an oil and gas lease in accordance with the terms set forth in the uniform oil and gas lease form. Appellants' petition prayed that the court "award Plaintiffs specific performance and give Plaintiffs the opportunity to accept or reject the negotiated lease, as described herein . . . ."

---

[5]The uniform oil and gas lease form specifically states on page 11:

> (c) Lessor Acknowledgement . . . By signing this Lease, Lessor [i.e., Appellants] acknowledges and stipulates that Lessor was not obligated to sign this lease based upon the terms negotiated by [SFWA] with Lessee and that Lessor had the right to negotiate its own terms with any company prior to signing this lease. Additionally, Lessor acknowledges that it is the Lessor's obligation to investigate the Lease, all negotiated terms, to take such action as necessary to make an informed decision prior to signing this Lease, and that the decision made by Lessor in signing this lease is made after fully researching the matter independent of any other information provided by [SFWA]. It is ultimately the responsibility of Lessor to (a) determine if Lessor wants to negotiate with the Lessee, (b) fully investigate the issues and facts related to signing an oil and gas lease, and (c) determine what terms are acceptable to Lessor to be included in this lease.

## III. GROUNDS FOR SUMMARY JUDGMENT

The trial court's summary judgment expressly stated that it was granted on several grounds, including that Appellants "do not qualify as third-party beneficiaries to the alleged contract" between Vantage and SFWA.[6] Concerning Appellants' negligent misrepresentation claim, the trial court ruled that no evidence existed that Vantage had made any material misrepresentations of existing fact to Appellants. Concerning Appellants' promissory estoppel pleading, the trial court ruled that no evidence existed that Vantage had promised to sign an already existing written agreement.

## IV. APPELLANTS LACK STANDING TO ASSERT BREACH OF CONTRACT CLAIM

### A. The Law Concerning Standing to Sue as a Third-Party Beneficiary

In Texas, "standing" denotes the presence of a real controversy between the parties that will actually be determined by the judicial declaration sought. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005); *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 209–10 (Tex. App.—El Paso 2010, pet. denied). Standing is a necessary component of subject-matter jurisdiction, without which a court lacks authority to hear a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). Because

---

[6]The trial court also granted summary judgment on the grounds that "[n]o legally valid contract was made or exists between [Vantage] and SFWA" and that "the alleged contract [between Vantage and SFWA] is otherwise unenforceable because it does not comply with the statute of frauds." Appellants challenge these grounds for summary judgment in their first, third, fourth, fifth, sixth, and seventh issues. Because we affirm the trial court's summary judgment on other grounds, we need not address these grounds. *See Warren v. Am. Nat'l Fire Ins. Co.*, 826 S.W.2d 185, 189 (Tex. App.—Fort Worth 1994, writ denied) (explaining that because appellate court determined independent ground existed for summary judgment, it need not address appellant's remaining challenges to summary judgment); *see also* Tex. R. App. P. 47.1.

standing is a component of subject-matter jurisdiction, it may be raised for the first time on appeal by the parties or by the court. *Id*. at 445–46.

To establish standing to assert a breach of contract cause of action, a party must prove its privity to the agreement or that it is a third-party beneficiary. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied); *see also Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574, 577 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). A third party may enforce as a third-party beneficiary a contract it did not sign when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.,* 995 S.W.2d 647, 651 (Tex. 1999). When the contract confers only an indirect, incidental benefit, a third party cannot enforce the contract. *Tawes*, 340 S.W.3d at 425 (citing Restatement (Second) of Contracts § 315 (1981); 13 Williston on Contracts § 37:19, at 124–25 (4th ed. 2000) ("An incidental beneficiary acquires no right either against the promisor or the promisee by virtue of the promise.")).

Traditionally, Texas courts have presumed that a party contracts only for its own benefit and have therefore maintained a presumption against third-party beneficiary agreements. *Id*.; *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex. 1975) ("[W]e must begin with the presumption that parties contract for themselves . . . ."); *Standard Accident Ins. Co. v. Knox*, 144 Tex. 296, 303–04, 184 S.W.2d 612, 615 (1945). Therefore, in the absence of a clear and unequivocal expression of the contracting parties' intent to directly benefit a third

party, courts will not confer third-party beneficiary status by implication. *Tawes*, 340 S.W.3d at 425; *MCI Telecomms.*, 995 S.W.2d at 651.

Consequently, a third-party beneficiary will not be recognized unless the intent to make him or her so is clearly written or evidenced in the contract. *Tawes*, 340 S.W.3d at 425; *MCI Telecomms.*, 995 S.W.2d at 651. "[T]he fact that a person is directly affected by the parties' conduct, or that he 'may have a substantial interest' in a contract's enforcement, does not make him a third[-]party beneficiary." *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 134 (Tex. App.—Houston [14th Dist.] 1997, no pet.), *abrogated on other grounds by Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd). The third-party beneficiary need not be specifically named in the contract but must be otherwise sufficiently described or designated. *Knox v. Ball*, 144 Tex. 402, 413, 191 S.W.2d 17, 23 (Tex. 1945).

To qualify as a third-party beneficiary, the party must show that he is either a donee or creditor beneficiary of the contract, not one who is benefitted only incidentally by the performance of the contract. *MCI Telecomms.*, 995 S.W.2d at 651; *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex. App.—Fort Worth 1992, no writ) (explaining that "only donee and creditor beneficiaries have enforceable rights"). A donee beneficiary is a party to whom the performance promised will, when rendered, come to him as a pure donation; a creditor beneficiary is one to whom the performance promised will come in satisfaction of a legal duty owed to him by the promisee. *MCI Telecomms.*, 995 S.W.2d at 651. This legal duty may include indebtedness, contractual obligations, or other legally enforceable commitments owed to the third party. *Id.; see also Stine v. Stewart*, 80 S.W.3d 586, 588 (Tex. 2002) (holding mother qualified as third-party

7

beneficiary to daughter and son-in-law's agreement incident to divorce because it provided for repayment to mother of a specific amount of money from the proceeds of the sale of the couple's home).

## B. Application of the Law to the Present Facts

The summary judgment evidence conclusively establishes that Appellants are not parties to any contract that may exist between Vantage and SFWA. Appellants instead contend in their second issue that they are third-party beneficiaries of the alleged contract between Vantage and SFWA. To determine whether any Vantage and SFWA contract expressed a clear intent to directly benefit Appellants, we must interpret the alleged contract between Vantage and SFWA. *See Tawes*, 340 S.W.3d at 425.

Viewing the summary judgment evidence in the light most favorable to Appellants, the assorted emails and attachments that Appellants claim constitute the contract between Vantage and SFWA nowhere identify Appellants by name as intended beneficiaries. *Compare Stine*, 80 S.W.3d at 588 (holding decree's identification of person by name was sufficiently specific for purposes of third-party beneficiary status), *with Brown v. Fullenweider*, 52 S.W.3d 169, 170 (Tex. 2001) (holding decree's failure to identify attorney by name was insufficient to confer third-party beneficiary status on him concerning decree's allocation of the payment of his fees).

Appellants nonetheless claim that they are identified in the purported Vantage/SFWA contract by geographic boundaries; that is, they live in one of the neighborhoods in which the neighborhood homeowners' association elected to participate in SFWA. The summary judgment evidence conclusively establishes, however, that no map was attached to or included in the documents that

8

Appellants identify as the contract between Vantage and SFWA, and Appellants' respective properties and addresses are not described or mentioned in the alleged contract.[7] Moreover, each Appellant testified that he or she did not pay any dues to SFWA or sign any document in order to be a member of SFWA, and the summary judgment evidence establishes that some homeowners in the neighborhoods participating in SFWA had signed mineral leases with other energy companies. The mere fact that Appellants own minerals within the geographical boundaries of one of the neighborhoods participating in SFWA cannot make them part of an identified, discrete, limited group of individuals specifically intended to be third-party beneficiaries of the purported Vantage/SFWA contract because some individuals in this very group had already signed mineral leases with other energy companies and thus were clearly not intended third-party beneficiaries of any Vantage/SFWA contract. *See Tawes*, 340 S.W.3d at 428 (explaining that the joint operating agreement at issue did not "identify a 'specific, limited group of individuals' to which the consenting parties owe an obligation"). And to the extent that Appellants claim the purported Vantage/SFWA contract was intended to benefit only mineral owners in the neighborhoods electing to participate in SFWA who had not already signed a mineral lease with another energy company, this subset of individuals is even more unidentifiable and more nondiscrete because the group composition could

---

[7]Appellants claim that they are identified in a "leasing priority spreadsheet" prepared by Vantage. This spreadsheet is not attached to the emails that Appellants contend constitute the contract between Vantage and SFWA, and it does not identify Appellants by name, address, or property description. The spreadsheet simply lists the neighborhoods participating in SFWA and proposes a sequential order for prioritization of the signing of leases.

9

change on a daily or hourly basis as mineral owners in neighborhoods participating in SFWA executed leases with other companies; in fact, the uniform oil and gas lease form expressly acknowledges that Appellants had the "right to negotiate [their] own terms with any company." Thus, even assuming a contract existed between Vantage and SFWA, no intent to directly benefit Appellants as third-party beneficiaries is clearly written or evidenced in such contract because Appellants are not indentified individually by name, by address, or by property description and are not sufficiently specifically identified as a group by membership in SFWA, by geographic location, or by any other discrete criteria. S*ee, e.g., Tawes*, 340 S.W.3d at 428 (addressing sufficiency of identification of individual as a member of a group in joint operating agreement in order to qualify for third-party beneficiary status); *Brown*, 52 S.W.3d at 170 (addressing sufficiency of identification of individual in decree in order to qualify for third-party beneficiary status).

We have not located, and Appellants have not cited, any case supporting the proposition that persons who in a contract are unnamed, unidentified by address or by property description, and are unidentifiable by membership in a specifically defined, discrete, limited group can be intended by the contracting parties to be beneficiaries of that contract. *Compare Stine*, 80 S.W.3d at 588 (holding decree's identification of person by name was sufficiently specific for purposes of third-party beneficiary status), *with Brown*, 52 S.W.3d at 170 (holding decree's failure to identify attorney by name was insufficient to confer third-party beneficiary status on him concerning decree's allocation of the payment of his fees). To the contrary, in such a situation, we must presume that the contracting

10

parties, here Vantage and SFWA, contracted for themselves. *See Tawes*, 340 S.W.3d at 425; *MCI Telecomms.*, 995 S.W.2d at 651.

Finally, to date, the law recognizes only two types of third-party beneficiaries: donee beneficiaries and creditor beneficiaries. *See MCI Telecomms.,* 995 S.W.2d at 651. The summary judgment evidence conclusively establishes that, concerning the alleged contract between Vantage and SFWA, Appellants are neither. Appellants are not donee beneficiaries because the performance allegedly promised by Vantage that Appellants seek specific performance of—the offer and execution of a lease in accordance with the terms of the uniform oil and gas lease form—will, when rendered, not come as a pure donation but will be made in exchange for the lease of Appellants' mineral rights. *See id.* Likewise, Appellants are not creditor beneficiaries because Vantage owed Appellants no legal duty, indebtedness, or contractual obligation. *See id.* The alleged contract between Vantage and SFWA did not express an intent to confer a benefit on Appellants or an intent that Appellants possess the right to enforce the alleged contract between Vantage and SFWA. *See MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 16 (Tex. App.—Dallas 1988, writ denied). Appellants therefore are at most only incidental beneficiaries of any contract between Vantage and SFWA, and "an incidental beneficiary acquires no right either against the promisor or the promisee by virtue of the promise." *See Tawes*, 340 S.W.3d at 425 (quoting 13 Williston on Contracts § 37:19, at 124–25 (4th ed. 2000)).

For all of these reasons, based on our review of the summary judgment evidence, we hold that the trial court correctly determined as a matter of law that Appellants were not third-party beneficiaries of any Vantage/SFWA contract.

Because Appellants are not third-party beneficiaries, they lack standing to sue to enforce the purported Vantage/SFWA contract. *See OAIC Commercial Assets, L.L.C.*, 234 S.W.3d at 738. We overrule Appellants' second issue,[8] dismiss Appellants' appeal of the summary judgment on their breach of contract claim, and render judgment dismissing Appellants' breach of contract claim. *See Brown v. Todd*, 53 S.W.3d 297, 306 (Tex. 2001) (rendering judgment dismissing claims following determination of lack of standing).

## V. SUMMARY JUDGMENT PROPER ON NEGLIGENT MISREPRESENTATION CLAIM

The trial court granted summary judgment on Appellants' negligent misrepresentation claim on two grounds, one of which was that no evidence exists that Vantage "made material misrepresentations of existing fact."[9] Appellants claim that the material misrepresentation that Vantage made was "to SFWA that it would give all un-leased mineral owners in SFWA the opportunity to

---

[8]Having determined that Appellants do not possess standing to sue for breach of any contract that may exist between Vantage and SFWA, we need not address Appellants' eighth issue alleging that a genuine issue of material fact exists as to their damages on their breach of contract claim. *See* Tex. R. App. P. 47.1 (stating that appellate court must address only issues necessary to final disposition of the appeal).

[9]The elements of a negligent misrepresentation claim are that (1) the defendant, in the course of his business, profession, or employment, or in another transaction in which he had a pecuniary interest, supplied to the plaintiff false information for guidance in a business transaction; (2) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; (3) the plaintiff justifiably relied on the information; and (4) the defendant's negligent misrepresentation proximately caused the plaintiff to suffer pecuniary loss. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999). The absence of evidence on the first element was one ground on which the trial court granted summary judgment on this claim.

12

accept the SFWA Deal." The summary judgment evidence conclusively establishes that many homeowners in neighborhoods participating in SFWA accepted leases with Vantage. Thus, Appellants' complaint is not that Vantage misrepresented any of the terms of the uniform oil and gas form lease but is essentially that Vantage misrepresented the length of time that its offer to lease minerals pursuant to the terms set forth in the uniform oil and gas lease form would remain open. No summary judgment evidence exists, however, that Vantage made any representation to SFWA or to any Appellants concerning how long its offer to lease minerals pursuant to the terms set forth in the uniform oil and gas lease form would remain open.

Moreover, this alleged misrepresentation is insufficient as a matter of law to support a negligent misrepresentation claim because it does not constitute a representation of existing fact; a promise of future conduct will not support a negligent misrepresentation claim. *See, e.g., BCY Water Supply Corp. v. Residential Inv., Inc.*, 170 S.W.3d 596, 602 (Tex. App.—Tyler 2005, pet. denied) (explaining that the "false information" contemplated in a negligent misrepresentation case must be a misstatement of existing fact, not a promise of future conduct); *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (same); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (same); *Airborne Freight Corp. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex. App.—El Paso 1992, writ denied) (same). A promise to do or to refrain from doing an act in the future is not actionable because it does not concern an existing fact. *BCY Water Supply Corp.*, 170 S.W.3d at 602.

For example, in *BCY*, the Tyler court held that the representation by a water supply employee that it would be no problem getting water service for a certain piece of property that the plaintiff was contemplating purchasing was "no more than a conditional promise of future performance" contingent on ownership of the property. *Id*. at 603. The Tyler court reversed a judgment on a jury verdict finding negligent misrepresentation. Likewise, in *Airborne*, the El Paso court held that the promise "as long as you do your job, you'll have a job" was "a conditional promise of future employment" that could not be characterized as a misrepresentation of existing fact; the El Paso court reversed a judgment on a jury verdict finding negligent misrepresentation. 847 S.W.2d at 298.

The promise that Appellants claim Vantage made to SFWA that it "would give all un-leased mineral owners in SFWA the opportunity to accept the SFWA Deal" is not a misrepresentation of existing fact that will support a negligent misrepresentation claim; instead, it is a promise to do an act in the future that is not actionable as negligent misrepresentation. *See, e.g., BCY*, 170 S.W.3d at 602; *Roof Sys., Inc.*, 130 S.W.3d at 439; *Allied Vista, Inc.*, 987 S.W.2d at 141; *Airborne Freight Corp.* 847 S.W.2d at 294. Hence, the trial court correctly granted summary judgment for Vantage on Appellants' negligent misrepresentation claim. We overrule Appellants' tenth issue.

## VI. APPELLANTS LACK STANDING TO ASSERT PROMISSORY ESTOPPEL CLAIM

In their ninth issue, Appellants claim that they pleaded promissory estoppel both as an independent cause of action and as a defense to the statute of frauds. The trial court's summary judgment stated that it was granting summary judgment on the ground that "Plaintiffs' promissory estoppel claim fails because there is no evidence that (1) Defendants made a promise to sign an already

14

existing written agreement that would itself satisfy the requirements of the statute of frauds or (2) that Plaintiffs relied on such a promise."

Concerning Appellants' claim that they asserted promissory estoppel as an independent cause of action, a cause of action for promissory estoppel does not operate to create liability where it does not otherwise exist. *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988); *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.—Corpus Christi 2001, no pet.). Promissory estoppel does not create a contract where none existed before but prevents a party only from insisting upon his strict legal rights when it would be unjust to allow him to enforce them. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972). The requisites of promissory estoppel in Texas are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

For the same reasons Appellants lack standing to assert a breach of contract cause of action, they likewise lack standing to assert a promissory estoppel cause of action. The summary judgment evidence conclusively establishes that Vantage did not make any promise to Appellants; Appellants do not dispute this, but claim only that Vantage made a promise to SFWA. In short, Appellants are not "promisees" who can assert the independent claim of promissory estoppel against Vantage. *See, e.g., Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965) (recognizing promissory estoppel theory may be invoked when promisee obtains promise from promisor that is less than a legally sufficient contract); *see also O'Connor's Texas Causes of Action* ch. 5-D, § 1.1 (2011) (listing first element of promissory estoppel as "1. The defendant made a

promise to the plaintiff"). Because Appellants do not qualify as third-party beneficiaries of the purported Vantage/SFWA contract and do not qualify as promisees to whom Vantage made any promise, they cannot create liability for Vantage or create some promise between themselves and Vantage where none exists as a matter of law. We hold that Appellants lack standing to assert a promissory estoppel cause of action against Vantage. We dismiss Appellants' appeal of the summary judgment on their promissory estoppel claim and render judgment dismissing Appellants' promissory estoppel claim. *See Brown*, 53 S.W.3d at 306.

Concerning Appellants' claim that they asserted promissory estoppel as a defense to the application of the statute of limitations, we need not address this contention because, for purposes of this opinion, we have assumed a valid, written contract existed between Vantage and SFWA, and we have held that the trial court nonetheless correctly granted summary judgment for Vantage on all of Appellants' claims. We therefore overrule Appellants' ninth issue.

## VII. CONCLUSION

Having overruled Appellants' second and ninth issues and having determined that Appellants lack standing to assert a breach of contract claim and an independent promissory estoppel claim, we render judgment dismissing those claims against Vantage. Having overruled Appellants' tenth issue and having determined that we need not address the remainder of Appellants' issues, we affirm the trial court's summary judgment on Appellants' negligent misrepresentation claim.

SUE WALKER
JUSTICE

16

PANEL:  LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

DELIVERED:  February 9, 2012