

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00079-CV

CHRIS LAWRY                                                    APPELLANT

V.

PECAN PLANTATION OWNERS                                        APPELLEES
ASSOCIATION, INC. AND PECAN
PLANTATION VOLUNTEER FIRE
DEPARTMENT AND EMERGENCY
MEDICAL SERVICES, INC.

----------

### FROM THE COUNTY COURT AT LAW OF HOOD COUNTY
### TRIAL COURT NO. C06397

----------

## MEMORANDUM OPINION[1]

----------

Chris Lawry appeals from two underlying summary judgment rulings and a

final judgment for attorney's fees in favor of Pecan Plantation Owners

Association, Inc. (the Association) and Pecan Plantation Volunteer Fire

---

[1]*See* Tex. R. App. P. 47.4.

Department and Emergency Medical Services, Inc. (the Fire Department). We modify the judgment in part, affirm it in part, and reverse and remand it in part.

**Background**

Pecan Plantation is a subdivision located in Hood and Johnson Counties, Texas. The Association is a nonprofit corporation with members who are property owners in the subdivision. The Association was established to provide members with common amenities such as a clubhouse, recreational facilities, private roadways, and security.

Historically, fire and other emergency services (EMS), including dispatch services for the subdivision, were provided by the Association, but in 1996, the Fire Department was incorporated as a separate nonprofit entity. In 2006, the Fire Department ceased performing dispatch services for Pecan Plantation, and Hood County's 911 system began providing dispatch services. Thereafter, the Association and the Fire Department agreed that the Fire Department would be the exclusive provider of EMS for the subdivision, and they entered into an Agreement for Emergency Services (the Agreement) dated September 12, 2006. The Fire Department also entered into a mutual aid agreement with Hood County and Hood County EMS to provide backup services for each other.

The Agreement contains a provision stating that the Fire Department will bill a patient's insurance when it provides emergency services. The version of the Agreement in the record also contains the following statement in the same paragraph as the above provision, which is struck out, with initials next to the

2

strikeout, and the handwritten date "8/23/07":  "Any bill or a portion of the bill not covered by the insurance will not be billed to the patient."  The Agreement also contains an indemnification provision:  "[The Fire Department] agrees to indemnify, hold harmless, and defend [the Association] from and against any and all claims, losses, liabilities, damages, costs, expenses, demands and obligations, including attorney fees arising out of, or relating in any way to, the [Fire Department's] services."

Before 2008, the Association's bylaws allowed for the levy of assessments on members for the purpose of the "improvement, maintenance, management, and administration of" Association property and common facilities as authorized by the recorded declaration of covenants, conditions, and restrictions governing the subdivision (the Declaration).  In 2008, in accordance with the Association's bylaws, the members approved a ballot proposal to change the bylaws to allow assessments for the additional purpose of "providing financial support for fire protection and emergency services."  The ballot measure indicated that if it passed, each member would be charged $10 per month per lot for that new purpose.  Thus, effective March 1, 2008, the bylaws provided for assessments

> for the purpose of providing financial support for fire protection and emergency services and improvement, maintenance, management, and administration of the Association Property and Common facilities, including, but not limited to, the payment of taxes and insurance thereon and repair replacement and additions thereto, and for the expenses of administering and enforcing the [Declaration] . . . and for carrying out the purposes of the Corporation as stated in its Articles of Incorporation as amended.

3

In December 2012, Lawry sued the Association asserting claims for breach of contract and the filing of a fraudulent lien[2] and seeking a declaratory judgment that the March 1, 2008 bylaws amendment is void and violative of the Declaration. A little over a month later, Lawry filed a second amended petition that included only the declaratory judgment claims; he also filed a motion for summary judgment. The Association then filed a traditional and no-evidence summary judgment motion on all of Lawry's claims and a traditional motion for summary judgment seeking its attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2015). The trial court granted the Association's motion for summary judgment as to Lawry's claims but denied its motion as to attorney's fees.

Lawry then filed another amended petition[3] reiterating his claims against the Association and adding the Fire Department as a defendant. He sought a declaratory judgment that the indemnification provision in the Agreement made the Fire Department jointly and severally liable for any attorney's fees he might be ordered to pay the Association as a result of his suit. Lawry also sought

---

[2]The Declaration provides that the Association has a lien upon a property owner's lot to secure the payment of any "dues, fees, and charges" assessed to members in accordance with the provision of maintenance and services by the Association.

[3]By the time the trial court rendered its final judgment, the last live petition was the Fifth Amended Petition.

attorney's fees from the Fire Department under section 37.009 of the civil practice and remedies code.

The Fire Department filed a motion for summary judgment incorporating the arguments in and evidence attached to the Association's motion for summary judgment. The Fire Department also alleged that Lawry lacked standing to bring his indemnification claim because he is not a party to the Agreement and he did not plead or prove that he is a third party beneficiary. The Fire Department likewise pled for a traditional summary judgment for attorney's fees, alleging that Lawry's suit against it was groundless and brought in bad faith and that it was entitled to fees under section 37.009. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.006 (West 2002), 37.009; Tex. R. Civ. P. 13.

Lawry filed his Fifth Amended Petition before the hearing on the Fire Department's motion for summary judgment; in it, he added a claim seeking damages in the amount of past EMS assessments he had paid to the Association under a theory that the Fire Department had been unjustly enriched by receiving them from the Association. Accordingly, the Fire Department filed a second motion for summary judgment addressing the new claim. The trial court eventually granted the Fire Department's motion for summary judgment on both of Lawry's claims, but it denied the Fire Department's motion for summary judgment on attorney's fees. The trial court also found that Lawry's claims had not been brought in bad faith.

The parties tried the Association's and Fire Department's claims for attorney's fees to a jury. The jury awarded (1) the Association $31,611.13 for trial, $10,000 for an appeal through this court, and $23,000 for an appeal through the supreme court, and (2) the Fire Department $31,795 for trial, $15,000 for an appeal through this court, and $28,000 for an appeal through the supreme court.

## Issues

Lawry raises six issues in this appeal: (1) that the trial court erred by granting the Association's motion for summary judgment; (2) that the trial court erred by granting the Fire Department's motion for summary judgment; (3) that the trial court erred by excluding his proffered trial testimony regarding his attempts to resolve the dispute before filing suit; and (4–6) that the evidence is legally and factually insufficient to support the jury's award of trial and appellate attorney's fees for the Fire Department and appellate attorney's fees for the Association.

## Summary Judgment Standard of Review[4]

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the

---

[4]Because we resolve the summary judgment motion issues on traditional grounds only, we will recite the standard of review for traditional motions for summary judgment only.

nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

### Association's Motion for Summary Judgment

The Association moved for summary judgment on the following grounds: Lawry's claim is barred by limitations, Lawry ratified the amendment by voting for it and then waiting over four years to file suit, and even if the suit is not barred, as a matter of law the bylaws amendment does not conflict with the Declaration. The trial judge did not state the specific grounds for granting the motion in the written order[5] although he verbally noted at the hearing on the motion, "I granted their motion for summary judgment *on limitations for sure*." [Emphasis added.] The trial judge also verbally denied Lawry's motion for summary judgment.

---

[5]Lawry incorrectly states in his brief that the trial court granted the motion solely on the limitations ground. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996).

**Live Pleading at Time of Order (Third Amended Petition)**

In his Third Amended Petition, Lawry sought a declaration that the March 1, 2008 bylaw amendment allowing assessments for EMS purposes conflicts with the Declaration in violation of property code section 209.0041. Tex. Prop. Code Ann. § 209.0041 (West Supp. 2016); *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 2015). He also sought a declaration that the past assessments against him in accordance with that amendment were void as a matter of law for the same reason, as well as recovery of his "costs incurred in this [a]ction." The gist of Lawry's complaint is that the bylaws amendment allowing the Association's board of directors to make assessments for "providing financial support for fire protection and emergency services" falls outside of the Declaration's grant of authority to the Association to make assessments for "any other services and benefits which the Association may provide for the benefit of the lots, facilities, and members."

**Applicable Law and Declaration Provisions**

Property code section 209.0041(i), which applies to "a residential subdivision in which property owners are subject to mandatory membership in a property owners' association," provides that a bylaw of a property owners' association "may not be amended to conflict with the declaration." Tex. Prop. Code Ann. § 209.0041(b), (i). This provision was enacted during the 2011 legislative session with an effective date of September 1, 2011. Act of May 29, 2011, 82nd Leg., R.S., ch. 1217, §§ 4–5, 2011 Tex. Sess. Law Serv. 3250, 3252.

8

Because Lawry's claims against the Association challenge whether the wording and purpose of the bylaw amendment conflicts with the wording and purpose of the Declaration, we must turn to general rules of construction.

We review a trial court's interpretation of restrictive covenants de novo. *Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied). We apply general rules of contract construction when construing restrictive covenants. *Id.*; *see Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). If the covenant has a definite or certain meaning, it is unambiguous as a matter of law. *Buckner*, 133 S.W.3d at 297. A restrictive covenant should be liberally construed to give effect to its purpose and intent. Tex. Prop. Code Ann. § 202.003(a) (West 2014); *Buckner*, 133 S.W.3d at 297.

Here, the Declaration defined the Association as "a non-profit corporation organized for the purposes stated in paragraph III C 5 below." In paragraph III C 5, the Association is described as "a non-profit corporation organized for the purpose of providing its members with a clubhouse and private recreational facilities and of establishing and maintaining private ways, security protection *and other services for the common benefit of all lot owners*." [Emphasis added.] That paragraph goes on to state that a lot owner's membership in the Association

> shall be conditioned upon observance of the rules and regulations established by the Association for the benefit and general welfare of its members and for the official operation thereof. Said membership shall also be conditioned upon payment, when due, of such dues, fees, and charges as the Association shall find necessary for the

9

maintenance of the aforesaid facilities and services and *any other services and benefits which the Association may provide for the benefit of the lots, facilities, and members*.

[Emphasis added.] Paragraph 6 provides that the Association will have a lien on the member's lot "to secure the payment of the aforementioned dues, fees, and charges."

Paragraph III C 8, entitled Assessments, provides as follows:

8. <u>Assessments.</u> Beginning upon completion of Clubhouse and opening of the Golf Course each purchaser of a lot from Dedicator, and the successors and assigns of said purchaser, shall be assessed the sum of $15.00 per month payable to the Association for the maintenance and operations of the Association's services and facilities, and Dedicator shall pay all other sums incurred by the Association for the construction, development, and operation of its facilities and services. Such assessments shall continue until such time as Dedicator, if it elects to do so in its discretion, has transferred the voting rights in the stock to the membership at large of the Association; *thereafter, such assessment shall be determined by the Association in accordance with its By-laws*. . . .

[Emphasis added.]

**Analysis**

One of the Declaration's enumerated purposes for the Association is to establish and maintain "any other services for the common benefit of all lot owners." The Declaration set the original assessment amount at $15.00 per month "for the maintenance and operations of the Association's services." And the Declaration further provided that after control of the Association transferred to the membership at large rather than the original developer, assessments were to be determined in accordance with the Association's bylaws. The March 1, 2008

10

bylaw amendment proposed to charge members an additional $10 per month "for fire protection and emergency services."

Lawry contends that because the most recent version of the Agreement deleted the provision prohibiting the Fire Department from charging property owners for EMS not covered by medical insurance, he does not receive a benefit from the assessment; therefore, it is not being used for the "common benefit" of all owners in the subdivision. But whether the Fire Department is using the assessment in the manner for which it was assessed is a separate issue from whether the bylaws amendment allowing assessments to be made for "providing financial support for fire protection and emergency services" conflicts with the language in the Declaration. Nevertheless, the Association's summary judgment evidence shows that the Fire Department agreed to respond to "emergency response dispatches . . . for the entirety" of Pecan Plantation "24 hours of each day of the year" and to "maintain at least one fully equipped ambulance and crew for emergency calls at all times." The Association also attached evidence that the Fire Department used the annual $120 per owner assessment to help fund staffing expenses and accumulate capital reserves and that the high quality rating of the Fire Department's equipment resulted in lower insurance premiums for the homeowners.

We conclude and hold that as a matter of law, the amendment to the bylaws authorizing an additional assessment for "fire protection and emergency services" does not conflict with the language in the Declaration providing that

11

assessments may be used to provide "other services for the common benefit of all lot owners." *See* Tex. Prop. Code Ann. § 209.0041(i); *Buckner*, 133 S.W.3d at 297. Accordingly, the trial court did not err by granting the Association's motion for summary judgment. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Because we conclude and hold that the trial court did not err by granting the Association's motion on traditional grounds, we need not address Lawry's arguments regarding the no-evidence motion or whether he was entitled to additional discovery. *See* Tex. R. App. P. 47.1; Tex. R. Civ. P. 166a(i). We overrule his first issue.

## Fire Department's Motion for Summary Judgment

In his Fifth Amended Petition, Lawry sought a declaratory judgment that if he were to be found liable for the Association's attorney's fees, the Fire Department should be jointly and severally liable for those fees. According to Lawry, as a member of the Association, he is either a party to the Agreement or a third-party beneficiary. Additionally, he sought recovery from the Fire Department of the $10 per month assessments that he had paid to the Association for "fire protection and emergency services"; Lawry alleged that the Fire Department had been unjustly enriched when the Association paid the assessments to the Fire Department because the Agreement did not provide for any payment to the Fire Department and because Lawry received no benefit from the assessment. In its answer, the Fire Department asserted limitations, lack of

12

standing, law of the case, judicial estoppel, res judicata, waiver, and ratification as affirmative defenses.

**Indemnification**

The Fire Department raised the following grounds in its motion for summary judgment on the indemnification claim: (1) Lawry lacks standing because he is a stranger to the Agreement and there is no evidence that he is either a party or third party beneficiary; and (2) the trial court's summary judgment for the Association is law of the case as to whether Lawry's claim is barred by limitations. The Fire Department also incorporated the Association's motion for summary judgment and attachments. Lawry responded with an affidavit in which he averred that "the members of the [Association] received no benefit from the assessment for a donation to [the Fire Department]" and that as a member of the Association, he is "either a party to the Agreement or a third party beneficiary. The members of the [Association] were the intended beneficiaries of the Agreement."

This court has held that a party's status as a member of a nonprofit corporation does not automatically confer standing on that party to enforce an agreement between the nonprofit corporation and a third party. *See Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756–60 (Tex. App.—Fort Worth 2012, pet. denied). Instead, the member of that corporation must show that he or she qualifies as either a donee or creditor beneficiary of the contract rather than one who is benefitted only incidentally by performance of the contract. *Id.* at 757. A

13

donee beneficiary is a party to whom the performance promised will, when rendered, come to him as a pure donation; a creditor beneficiary is one to whom the performance promised will come in satisfaction of a legal duty owed to him by the promisee. *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *Maddox*, 361 S.W.3d at 757. This legal duty may include indebtedness, contractual obligations, or other legally enforceable commitments owed to the third party. *MCI Telecomms.*, 995 S.W.3d at 651; *Maddox*, 361 S.W.3d at 757.

Nothing in the Agreement indicates that the indemnification provision was intended to inure to the benefit of individual members of the Association. The indemnification language itself indicates that the Fire Department agreed to indemnify "PPOA," defined as the Association, not any other parties or the Association's individual members. *See Drilltec Techs., Inc. v. Remp*, 64 S.W.3d 212, 215 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The Agreement also contains a provision stating that "[n]either party may assign any part of the rights or obligations under this Agreement to any third party, without the express written consent of the other party." *See id.* Lawry is not a donee beneficiary of the Agreement, as the indemnification he seeks would be in exchange for the services provided in the Agreement. *See Maddox*, 361 S.W.3d at 760. Nor would he be considered a creditor beneficiary because, as we have determined, the language of the indemnification provision indicates that it was only intended to be enforceable by the Association itself. *See id.* Accordingly, we conclude

14

and hold that the trial court did not err by granting summary judgment for the Fire Department as to Lawry's indemnification claim.

**Unjust Enrichment**

In its motion for summary judgment on Lawry's claim that the Fire Department had been unjustly enriched in receiving the assessments, the Fire Department again incorporated the Association's motion for summary judgment and attachments. The Fire Department raised as additional grounds that there is no evidence that it was unjustly enriched or that it "wrongfully secured or passively accepted payments from [the Association] that would be unconscionable for [the Fire Department] to retain." It further contended that there is no evidence that it would be "inequitable or against [its] good conscience . . . to retain the money . . . donated" to it by the Association for EMS.

Lawry responded with his own affidavit in which he averred that he "receive[s] no benefit from the monthly donation to" the Fire Department. He also averred that a separate provider, Texas EMS, also provides EMS in Pecan Plantation and that "EMS service was available to members of Pecan Plantation before the Agreement was signed through at least one other EMS service aside from" the Fire Department. Finally, Lawry averred that before the Association entered into the Agreement, contributions or donations to the Fire Department were voluntary but that as a result of the bylaws amendment, he "would be charged the same rate [the Fire Department] charges anyone else for their

15

services in Hood County even though [he] contribute[s] a 'forced' $10 per month donation to them."

This court has held that unjust enrichment is not an independent cause of action "but rather 'characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay.'" *Davis v. OneWest Bank N.A.*, No. 02-14-00264-CV, 2015 WL 1623541, at *1 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (mem. op.) (collecting cases). Lawry's basis for the return of the assessments is his argument that the bylaws amendment is void. However, we have already held that the trial court did not err by granting the Association's summary judgment on that part of Lawry's claims. Because the Fire Department incorporated the Association's motion and evidence, we conclude and hold for the same reason that the trial court did not err by granting the Fire Department's motion for summary judgment as to Lawry's pleading for damages in the amount of past assessments he had paid for EMS. We therefore conclude and hold that the trial court did not err by granting summary judgment for the Fire Department on Lawry's second claim. We overrule Lawry's second issue.

**Issues Related to Attorney's Fees**

**Exclusion of Lawry's Testimony at Trial**

In his third issue, Lawry contends that the trial court abused its discretion by excluding "virtually all offered testimony by . . . Lawry as to the reason for his

filing the original lawsuit." Lawry made an offer of proof summarizing his expected testimony that he tried to discuss his complaint with the Association and Fire Department representatives before filing suit, and they refused to discuss it with him. The trial court denied his offer, stating, "[I]t's irrelevant, and also based on res judicata those issues have been resolved." According to Lawry, "[t]he testimony of why [he] filed the lawsuit only after attempting to discuss the issues with the [Association and Fire Department] was relevant to the issue of [whether] the award of fees [is] equitable and just and the issue before the jury of the fees being reasonable and necessary." The Association characterizes Lawry's argument as "the Association's failure to see the Amendment (and subsequent Assessment) as invalid forced Appellant to file the lawsuit, resulting in the Association incurring attorney's fees."

In a proceeding under the Uniform Declaratory Judgments Act, "the court may award . . . reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The reasonableness and necessity of attorney's fees are questions of fact. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Whether an award of fees is equitable and just is a matter of law to be decided within the trial court's discretion. *Id.* Lawry has not appealed the trial court's determination that an award of attorney's fees is equitable and just.[6] Therefore, we review Lawry's evidentiary complaint to

---

[6]In the context of his argument that his testimony should not have been excluded, he states that it was the only evidence regarding whether the fees

17

determine its relevance to the question of whether the alleged attorney's fees were reasonable and necessary.  *See id.*

The well-known factors a court must consider when reviewing whether the evidence supports a finding that attorney's fees are reasonable and necessary include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (op. on reh'g) (citing Tex. Disciplinary R. Prof'l Conduct 1.04, *reprinted in* Tex.

---

were just and equitable; however, he does not seek reversal or rendition from this court on that basis.

18

Gov't Code Ann. tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)). Here, because the question for the jury's determination was whether or not the fees incurred after Lawry filed suit were reasonable and necessary, the trial court did not abuse its discretion by excluding evidence regarding matters occurring before the suit. *See id.*; *Bocquet*, 972 S.W.2d at 21; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Moreover, to the extent that the evidence is pertinent to the trial court's determination of whether the imposition of fees is equitable and just, the trial court had already considered this evidence via Lawry's affidavit attached to his response to the Fire Department's summary judgment motion. We overrule Lawry's third issue.

**Sufficiency of Evidence of Fire Department's Trial and Appellate Fees**

In his fourth and fifth issues, Lawry contends the evidence is legally and factually insufficient to support the award of trial and appellate attorney's fees to the Fire Department.

Blake Cox testified that he had been an attorney in Tarrant County, Texas for twenty-eight years, primarily practicing real estate litigation. He had handled cases in Hood County and was familiar with the usual and customary fees charged by attorneys in the area. Cox testified that his hourly rate was $350 per hour and that his fellow attorneys' rates were $300 and $200 per hour. In his opinion, considering all of the *Arthur Andersen* factors, the Fire Department's reasonable and necessary fees for all work through the trial were $31,795. The trial court admitted an exhibit containing a table showing generally how many

19

hours each attorney with Cox's firm worked on the file and the total fee for each based on their hourly rates. Cox testified in detail about the work the lawyers collectively performed and why. Cox further testified that in his experience, a reasonable and necessary fee for appeal to this court would be $15,000, $8,000 if a petition for review were filed in the supreme court, and $20,000 if the supreme court granted that petition. Lawry did not present any controverting evidence.

The Fire Department also offered two invoices purporting to show detailed billing records for all three attorneys, but the trial court sustained Lawry's objection to their admission because the Fire Department had not supplemented discovery with them. Cox admitted on cross-examination that the fee he had testified to was reasonable and necessary and included the time that any of the three lawyers with his firm "spent on the file at their respective rate."

The supreme court has recently held that a party who sought attorney's fees in part under section 37.009 of the civil practice and remedies code by presenting evidence of a total amount of hours worked multiplied by an hourly fee—in the same manner as the Fire Department did here—had elected to use the lodestar method of calculating attorney's fees. *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014); *Helms v. Swanson*, No. 12-14-00280-CV, 2016 WL 1730737, at *6 (Tex. App.—Tyler Apr. 29, 2016, pet. filed) (mem. op.). In *Long*, the supreme court held that the evidence presented of the total hours worked, hourly billing rates for two attorneys, and total fees based on those hours was

20

legally insufficient to support the total attorney's fees award because there was no supporting evidence regarding the amount of time each attorney spent on each specific task. 442 S.W.3d at 255–56. The facts in this case are similar. Although Cox testified regarding the type of work performed in detail, he did not attempt to ascribe specific tasks to each of the attorneys, nor did the Fire Department offer other supporting evidence that would have done so. Accordingly, we conclude and hold that the trial attorney's fees award to the Fire Department was not supported by legally sufficient evidence. *See id.*; *Felix v. Prosperity Bank*, No. 01-14-00997-CV, 2015 WL 9242048, at *4 (Tex. App.— Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op.); *United Nat'l Ins. Co. v. AMJ Invs., LLC*, 447 S.W.3d 1, 16–18 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd). *But cf. Myers v. Sw. Bank*, No. 02-14-00122-CV, 2014 WL 7009956, at *7 (Tex. App.—Fort Worth Feb. 5, 2015, pet. denied) (mem. op.) (distinguishing *Long* and holding attorney's fees affidavit sufficient when only one attorney billed time). We sustain Lawry's fifth issue.

However, we conclude and hold that the evidence of the Fire Department's appellate attorney's fees was legally and factually sufficient. Cox testified to his experience as a lawyer in Tarrant and Hood Counties and his familiarity with real estate litigation, and his testimony was uncontroverted. *See State & Cty. Mut. Fire Ins. Co. ex rel. S. United Gen. Agency of Tex. v. Walker*, 228 S.W.3d 404, 409–10 (Tex. App.—Fort Worth 2007, no pet.). Accordingly, we overrule Lawry's fourth issue.

21

**Sufficiency of Evidence of Association's Appellate Attorney's Fees**

In his sixth issue, Lawry challenges the legal and factual sufficiency of the appellate attorney's fees award to the Association.[7] The Association's attorney, Clayton Hearn, testified that he was the managing shareholder of his law firm and that he had been licensed since 1995. According to Hearn, since 1999 he had almost exclusively represented property owner associations, townhomes, condominiums, and planned unit developments. He had litigated "dozens and dozens," but fewer than one hundred, cases for homeowners associations; from between ten to twenty of those cases had been litigated on the merits. Hearn is board certified in labor and employment law.

Hearn testified that he had experience in appellate work as well and had worked on "several cases published from the court of appeals and . . . the Supreme Court of Texas." He estimated that "given all the parties and all the issues in this case," the Association's appellate fees would be a minimum of $10,000 for an appeal to this court, an additional minimum of $8,000 for a further appeal to the supreme court, and an additional $15,000 if the supreme court granted a petition for review. He added that additional travel time would need to be taken into consideration for an appeal to the supreme court because it is located in Austin. Hearn testified that in his experience, these fees would be

_____

[7]He does not challenge the trial attorney's fees awarded to the Association.

reasonable and necessary even given his tendency to underestimate how much time would be spent on an appeal.

Lawry contends that this evidence is insufficient because Hearn did not detail how many hours would likely be spent in connection with an appeal, who would work on the appeal, or what type of work would be required. He also claims that Hearn did not give a clear expert opinion. However, Hearn did testify regarding his experience and the basis of his familiarity with appeals; his testimony was based on that experience and familiarity. Lawry did not controvert this evidence. Accordingly, we conclude and hold that Hearn's testimony was both legally and factually sufficient to support the award of appellate attorney's fees for the Association. *See, e.g.*, *Nauman v. Lee*, No. 03-11-00066-CV, 2012 WL 1149290, at *10 (Tex. App.—Austin Apr. 5, 2012, pet. denied) (mem. op.); *State & Cty. Mut. Fire Ins. Co.*, 228 S.W.3d at 409–10.

We overrule Lawry's sixth issue.

**Appellate Fees Not Unconditional**

We note that both appellees' appellate attorney's fees awards are unconditional—they are charged against Lawry regardless of whether he prevails in the appeal. *See Courtade v. Gloria Lopez Estrada Family Trust*, Nos. 02-14-00295-CV, 02-14-00296-CV, 2016 WL 1164159, at *7 (Tex. App.—Fort Worth Mar. 24, 2016, no pet.) (mem. op.). A trial court may not grant an unconditional award of appellate attorney's fees because to do so could penalize a party for bringing a meritorious appeal. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex.

23

1998) (orig. proceeding); *Courtade*, 2016 WL 1164159, at *7. However, an unconditional award of appellate attorney's fees does not require reversal; instead, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal. *Courtade*, 2016 WL 1164159, at *7.

We therefore modify the trial court's awards of appellate attorney's fees to be contingent on the Association's and Fire Department's prevailing on appeal. *See id.*

**Conclusion**

We modify the trial court's judgment for the Association to make the award of appellate attorney's fees contingent upon its prevailing on appeal and affirm the remainder of the judgment for the Association as modified.

We likewise modify the trial court's judgment for the Fire Department to make the award of appellate attorney's fees contingent upon its prevailing on appeal, and we affirm the remainder of the judgment for the Fire Department except as to attorney's fees related to trial. Thus, we reverse the award of trial attorney's fees for the Fire Department in the amount of $31,795, and we remand this case to the trial court solely for a redetermination of the Fire Department's attorney's fees through the trial date of October 27, 2014. *See Long*, 442 S.W.3d at 256; *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (holding that remand is appropriate when evidence is legally insufficient to

24

support entire unsegregated attorney's fees award because that award is nevertheless some evidence of segregated attorney's fees).

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  August 18, 2016